MACRI CORPORATION, et al., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Macri Corp. v. Commissioner
Docket Nos. 862-72, 4010-72, 4012-72, 4013-72, 4014-72, 4039-72 and 4041-72.
United States Tax Court
T.C. Memo 1976-273; 1976 Tax Ct. Memo LEXIS 129; 35 T.C.M. (CCH) 1190; T.C.M. (RIA) 760273; August 26, 1976, Filed John J. Kane, Jr., for the petitioners. Buckley D. Sowards, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: These consolidated cases involve six related taxpayers: three individuals and three corporations which were either wholly or principally owned by the individuals involved. The taxpayers and their relationship to one another are as follows: Pat Ferruccio, Sr. Samuel J. Ferruccio (Pat's brother) Rocco A. Ferruccio (Pat's son) Liberty Vending Company, Inc. (owned 70 percent by Pat Ferruccio, Sr.; 10 percent by Samuel J. Ferruccio; 10 percent by Rocco A. Ferruccio; and 10 percent by Patrick M. Ferruccio, Jr.) [2]
P & R Enterprizes, Inc. (owned equally by Rocco and Patrick M. Ferruccio, Jr.-- sons of Pat Ferruccio, Sr.) Macri Corporation (owned 56 percent by Pat Ferruccio, Sr.; 22 percent *132 by Rocco A. Ferruccio; and 22 percent by Patrick M. Ferruccio, Jr.) Although these cases were consolidated for purposes of trial, we are presenting separate findings of fact and separate opinions for each taxpayer. This approach is in light of the number of taxpayers involved and the number of issues remaining for our determination (some 38 separate issues), even though it requires repetitive discussion on similar issues. Most of the issues herein are purely factual, the resolution of which has been made difficult by a haphazard and poorly developed record. In each instance, the party bearing the burden of proof has suffered the consequences flowing from his own failure to properly develop a record upon which findings in his favor might have been made. Pat Ferruccio and Estate of Roxy Ferruccio, Docket No. 4013-72; Pat Ferruccio, Docket No. 4041-72.
Respondent determined deficiencies in petitioners' Federal income tax as follows: Addition to
Docket
Tax
Petitioner
No.
Year
Deficiency
Sec. 6653(a)
Pat Ferruccio and
4013-72
1965
$47,997.13
$2,399.86
Estate of Roxy
1968
63,085.31
3,154.27
Ferruccio
Pat Ferruccio
4041-72
1966
45,474.85
2,273.74
1967
46,643.58
2,332.18
*133 Various concessions having been made, the following issues remain for our determination: 1. Whether petitioner Pat Ferruccio understated his income on individual returns filed for the years 1966 and 1967 in the respective amounts of $69,358 and $71,274; and whether petitioners Pat and Roxy Ferruccio understated their income on joint returns filed for the years 1965 and 1968 in the respective amounts of $60,460 and $85,519. 2. Whether petitioner Pat Ferruccio received additional income in the form of constructive dividends during the years 1965 through 1968 from Liberty Vending Company, Inc., Macri Corporation and North, Inc. 3. Whether the addition to the tax under section 6653(a) [3] is applicable for each of the years 1965 through 1968. 4. Whether the statute of limitations bars the assessment and collection of any deficiencies determined for the years 1965, 1966 and 1967. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Pat and Roxy Ferruccio (hereafter referred to as Pat and Roxy, respectively), husband and *134 wife, resided in Canton, Ohio, during the years in question and at the time the petitions in this case were filed. [4] Pat and Roxy timely filed joint income tax returns for the years 1965 and 1968 on which they reported gross income (including gross sales in 1965 and dividends before exclusion in 1968) in the respective amounts of $21,144 and $7,071.32. Pat timely filed individual income tax returns for the years 1966 and 1967 on which he reported gross income in the respective amounts of $5,000 and $5,609.On April 11, 1972, respondent mailed a statutory notice of deficiency, covering the years 1965 and 1968, to Pat and Roxy and on the same date respondent mailed a notice of deficiency to Pat covering the years 1966 and 1967. During the years 1965 through 1968 Pat was the majority shareholder in three closely held corporations: (1) Macri Corporation (hereafter Macri); (2) Liberty Vending Company, Inc. (hereafter Liberty); and (3) North, Inc. (hereafter North). Pat served as president *135 of both Macri and Liberty but his primary employment activities were in his capacity as president of Liberty. Upon advice of counsel Pat and Roxy declined to provide respondent's agents with records regarding their income for the years 1965 through 1968. Consequently, respondent used third party records to reconstruct income for those years. Employing the source and application of funds method of reconstruction, respondent determined that known cash expenditures exceeded known available funds [5] by the following amounts: 1965
$39,820
1966
34,061
1967
33,714
1968
40,155
However, respondent also determined that Samuel J. Ferruccio (Pat's brother and hereafter referred to as Samuel) and Rocco A. Ferruccio (Pat's son and hereafter referred to as Rocco) understated their incomes for each of the years 1965 through 1968.Anticipating that Samuel and Rocco would each claim that the source of his unreported income was a nontaxable gift from Pat, respondent, as a protective measure, added to Pat's known cash expenditures for each year the *136 amounts by which he determined Samuel and Rocco had understated their incomes for each such year. After adding these amounts, respondent determined that Pat's cash expenditures exceeded known available funds in the following years by the following amounts: [6]
1965
$60,460
1966
69,358
1967
71,274
1968
85,519
Neither Samuel nor Rocco claimed that Pat made gifts to them during the years in issue.Accordingly, respondent conceded on brief that the amounts by which he determined Samuel and Rocco had understated their incomes should not be treated as additional cash expenditures by Pat for the purpose of reconstructing Pat's income. Taking into account this concession, the excess of Pat's expenditures over known available funds, as determined by respondent for each of the years in issue, is as follows: 1965
$39,820
1966
34,061
1967
33,714
1968
40,155
*137 The parties have agreed on many of the items (and the correct amounts thereof) which appeared in respondent's reconstruction of income. The stipulation of facts, encompassing that agreement, indicates that Pat and Roxy had known available funds and made expenditures in at least the following amounts: 1965
1966
1967
1968
Total of known
available funds
which have been
stipulated
$37,239.01
$11,219.75
$8,849.75
$16,574.46
Total of ex-
penditures
which have been
stipulated
47,008.70
20,792.69
23,197.12
31,396.17
The items which appeared in respondent's reconstruction as expenditures which are still in issue are as follows: 1965
1966
1967
1968
Advance Commissions
$3,000
Food
1,040
$1,040
$1,040
$1,040
Electric
180
180
180
180
Clothing
300
300
300
300
Furniture
200
200
200
200
Cecil R. Bordine
500
Canton Bldg. & Foundation Co.
391.51
Travelers' Indemnity in
American Central Insurance
Company
1,300
Recreation
2,080
2,080
2,080
2,080
Cash Advance to George
McCarthy
125
We find that during each of the years in issue Pat spent $1,200 rather than $2,080, as *138 determined by respondent, for recreation. However, we find that Pat made each of the other above-listed expenditures in the amounts determined by respondent. An additional item which appeared as an expenditure in respondent's reconstruction was labeled "cash advances to Patrick M. Ferruccio, Jr." Patrick M. Ferruccio, Jr. (hereafter Pat, Jr.) was Pat's son who was 20 years old in 1965. Pat, Jr., did not work during the years in issue and was supported by his father. Respondent computed Pat, Jr.'s expenditures and known available funds for each of the years 1965 through 1968. Respondent then determined that an amount equal to the excess of Pat, Jr.'s expenditures over his known available funds for each year was received by him as a cash distribution from his father. That amount was then included as an expenditure by Pat in respondent's reconstruction of Pat's income.Although the parties have not reached an agreement as to the amount of cash advances made by Pat to Pat, Jr., in each year, they have agreed on some of the items which appeared in respondent's reconstruction of Pat, Jr.'s income. Respondent's computation of Pat, Jr.'s expenditures included the following items which *139 have not been agreed to in the stipulations: Expenditures
1965
1966
1967
1968
Insurance - Equitable of Iowa
$ 888.25
$ 420.00
$ 420.00
$ 428.50
Richard Bennett - New York, N.Y.
85.50
371.00
137.50
155.00
Rent - New York, N.Y.
- St. Johns College
468.00
Rent - Kent State University
462.50
1,110.00
1,110.00
555.00
Tuition - Kent State University
510.00
680.00
680.00
170.00
Food
520.00
520.00
520.00
520.00
Clothing
300.00
300.00
300.00
300.00
Transportation
300.00
300.00
300.00
300.00
Medical
150.00
150.00
150.00
150.00
Recreation
1,020.00
1,020.00
1,020.00
1,020.00
Tuition - St. Johns College,
New York, N.Y.
200.00
Total
$4,904.25
$4,871.00
$4,637.50
$3,598.50
We find that Pat, Jr., made the above expenditures in the above amounts, as determined by respondent. When these expenditures are added to the stipulated expenditures, the excess of Pat, Jr.'s expenditures over his known available funds (from sources other than his father) for each year is as follows: [7]
1965
$5,909.30
1966
6,448.53
1967
5,905.78
1968
6,717.80
*140 Respondent's computation of Pat's known available funds does not include all funds which were available to Pat during the years in issue. During 1967 Pat sold a number of diamond rings to James L. Yerkey for $11,000. Also in 1967 Pat sold a diamond ring to Pete Manoff for $4,000. In 1966, Pat received $1,432 from Monumental Life Insurance Company upon surrendering a life insurance policy which he had maintained with that company. In February 1963, Pat loaned $2,000 to John B. Sutton, Jr. (hereafter Sutton). Sutton repaid $1,000 in 1966 and $1,000 in 1968. Although the terms of the loan called for interest, Pat cancelled the interest obligation. In January 1967, Pat received $4,725 from Joseph Green pursuant to a settlement agreement, as payment in full of a loan which Pat had previously made to Green. In addition to the understatements determined through the use of the source and application of funds method of reconstructing income, respondent determined that Pat received unreported dividend income (through the use of corporate property and from various distributions of corporate property) from Macri, Liberty and North in the following amounts: 1965
1966
1967
1968
Macri
$ 5,500
$ 5,700
$5,900
$23,472
Liberty
1,200
2,150
3,050
5,428
North
37,010
5,361
Total
$43,710
$13,211
$8,950
$28,900
*141 The parties have agreed on some of the items (and the correct amounts thereof) which respondent characterized as dividend income. The stipulation of facts, encompassing that agreement, indicates that Pat received unreported dividend income in at least the following amounts: 1965
$1,852.50
1966
3,540.00
1967
2,302.00
1968
1,976.50
The additional items of dividend income which are still in issue are as follows: Fair
Rental
Fair
Value
Market
Use of
Per Month
Value
1965
1966
1967
1968
Corporate
Property
Liberty
$150.00
$
$ 1,200.00
$1,800.00
$1,800.00
$ 1,800.00
Vending
Co., Inc.
(a)
Cadillac
Automobile
Macri, Inc.
(a)
Personal
Residence
(1230 22nd
St., N.E.,
Canton,
250.00
3,000.00
3,000.00
3,000.00
3,000.00
Ohio)
Distributio
ns of
Corporate
Property
North, Inc.
(a)
Apartment -
2413
Cleveland
Ave.,
33,430.00
33,430.00
Canton,
Ohio
(b) Cash
advanced
from
McKinley
Savings and
Loan Co.;
Savings
1,600.00
700.84
account No.
1328
Macri, Inc.
(a) Jack's
Cafe
2600 8th
St., N.E.
Canton,
15,452.38
15,452.38
Ohio
TOTAL
$39,230.00
$5,500.84
$4,800.00
$20,252.38
DIVIDENDS
STILL IN
ISSUE:
*142 During the years 1965 through 1968 Pat operated a Cadillac automobile which was owned by Liberty. Liberty also provided Pat with a weekly automobile allowance of $45. Expenses incurred in the operation of the car in excess of the $45 weekly allowance were paid out of Pat's personal funds. Pat drove the car to and from work and sometimes called on customers while en route.The fair rental value of the car was $150 per month. Pat and Roxy lived in a house located at 1230 22nd Street, N.E., Canton, Ohio, which was owned by Macri. The house was built in 1950 at a cost of $26,000, and during the years in issue the fair rental value of the house was $250 per month. Although Pat did not pay rent for the use of the house, he did make various expenditures out of his personal funds for maintenance and repair. North owned an apartment building located at 2413 Cleveland Avenue, Canton, Ohio. In 1965 North transferred the apartment building to P & R Enterprises, Inc. (hereafter P & R) for the sum of one dollar and the assumption by P & R of an outstanding mortgage on the building in the amount of $16,797.19. P & R was owned by Pat's two sons, Rocco Ferruccio and Pat Ferruccio, Jr. *143 At the time the building was transferred, its fair market value was $33,430. North maintained a savings account at the McKinley Savings and Loan Company. In 1965, $1,600 was withdrawn from that account and distributed to Pat and in 1966 $700.84 was withdrawn from the account and distributed to Pat. Macri owned a building, known as Jack's Cafe, which was located at 2600 8th Street, N.E., Canton, Ohio. In 1968 Macri transferred the building, without consideration, to Pat, Jr.At the time the building was transferred, its fair market value was $15,452.38. OPINION Pat and Roxy Ferruccio declined to provide respondent with records pertaining to their income for the years 1965 through 1968. Respondent, therefore, reconstructed their income for those years, using third party records. Employing the source and application of funds method of reconstructing income, respondent determined that Pat understated his individual income for the years 1966 and 1967 and that Pat and Roxy understated their joint income for the years 1965 and 1968. Additionally, respondent determined that Pat received unreported dividend income during each of the years in issue. Respondent's determinations *144 are presumptively correct and petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933). There has been no showing that respondent's determinations were arbitrary and excessive so as to cause the presumption in respondent's favor to disappear under the holding of Helvering v. Taylor,293 U.S. 507 (1935). The source and application of funds method of reconstructing income is based on the assumption that the amount by which a taxpayer's application of funds during a taxable period exceeds his known available funds [8] for that same period has, absent some explanation by the taxpayer, taxable origins. As explanation, the taxpayer may show that the difference between the total for the application of funds and the total for known sources of funds is attributable to such nontaxable items as loans, gifts, inheritances, or assets on hand at the beginning of the taxable period. [9]
Petitioners argue that respondent's reconstruction *145 failed to give them credit for various nontaxable sources of income which they claim were available for disposition during the years in issue.Petitioners also contest various expenditures which have been asserted by respondent. With respect to alleged additional sources, petitioners attempted to establish the following: 1. In 1953 Pat sold a cigarette vending machine route for $50,181. 2. In 1953 Pat received $29,500 in cash at two different times from "a fellow in Canton" as repayment of a loan. 3. During the years 1958 through 1961 Pat received cash gifts from his mother totaling $56,500 and during the same years Pat received gifts of jewelry from his mother, which jewelry was worth $13,000 to $14,000. 4. In 1959 Pat sold a vending machine route for $18,000. 5. In 1961 Pat received $2,023 from New York Life Insurance Company upon surrendering a life insurance policy for its cash value. 6. In 1962 Pat received $3,041.43 from the estate of a Mr. Nickles [10] as repayment of a loan. 7. During the years in issue the estate of Teresa Ferruccio (Pat's mother), *146 of which Pat was administrator, received dividends on stock owned by the estate. 8. In May 1969 Pat had a lock box stored under the floor of his office which contained $35,000 to $40,000 in cash, various items of jewelry with an approximate total value of $28,000 and several sets of mint proof coins. We have been unable to make findings with respect to the above matters. Most of the evidence introduced with respect to these matters was in the form of testimony by Pat which we found to be vague, indefinite and self serving and upon which we have placed little value. See Murray Humphreys,42 B.T.A. 857 (1940), affd. 125 F. 2d 340 (7th Cir. 1942). To the extent that petitioners attempted to provide documentation or corroborative testimony, we have found such to be inconclusive. We assume that petitioners rely on all but one of the above items to establish a cash hoard out of which the excess expenditures during the years in issue were made. Even if we were able to make findings with respect to the receipt of the above amounts, there is no evidence that any of these amounts were still available to petitioners during the years in issue. Testimony *147 regarding amounts received by Pat in earlier years does not establish that those amounts were still available to Pat during the years in issue. Similarly the existence of a cash hoard in a later year, if indeed one existed, does not establish its existence in earlier years. The only additional source, alleged by petitioners, which might have been available during the years in issue was the dividend income received by the estate of Teressa Ferruccio. There is no evidence, however, that such dividends were distributed to Pat in his individual capacity and were available for his personal consumption. Our findings reflect several items that were received by Pat during the years in issue which do not appear in respondent's computation of Pat's available funds. In 1967 Pat received $15,000 from the sale of diamonds. However, Pat did not report income from the sale of these diamonds, and he was unable to establish at trial his basis in the diamonds. Under these circumstances, we cannot characterize these proceeds as a nontaxable source of funds. Therefore, $15,000 of the amount by which we determine that Pat understated his income for 1967 will be income derived from these sales. *148 We agree with petitioners, however, that the $1,432 received by Pat from Monumental Life Insurance Company, in 1966, should be considered as an additional nontaxable source for that year. We also agree that the following loan payments received by Pat should be considered additional nontaxable sources in the years received: Payment
Year
$1,000 (payment by John B. Sutton, Jr.)
1967
$4,725 (payment by Joseph Green)
1967
$1,000 (payment by John B. Sutton, Jr.)
1968
Although petitioners contest the following expenditures, they presented no evidence in this regard and we have, accordingly, upheld respondent's determination that they were made: 1965
1966
1967
1968
Food
$1,040
$1,040
$1,040
$ 1,040
Electric
180
180
180
180
Clothing
300
300
300
300
Furniture
200
200
200
200
Canton Building and
Foundation Co.
391.51
Advances to George
McCarthy
125
Petitioner presented evidence with respect to the following contested expenditures: Amount Determined by Respondent
1965
1966
1967
1968
Advance Commissions
(to Kent Development
Corporation)
$3,000
Cecil R. Bordine
$ 500
Travelers' Indemnity
in American Central
Insurance Company
1,300
Recreation
2,080
$2,080
$2,080
2,080
*149 Pat did not deny that he advanced $3,000 to Kent Development Corporation in 1967, but he claimed that the advance was a loan to Kent from funds belonging to Macri and not from his personal funds. This is in effect an argument as to source and not a contested expenditure. In any event, we are not convinced that the funds originated from Macri. The only documentation offered for this assertion is a copy of a bank record of an account which Macri had with the First Federal Savings and Loan Association of Canton, Ohio, which record indicates that $3,000 was withdrawn from the account on December 1, 1964. However, the note which Kent executed in respect of the advance was dated April 12, 1965. Additionally, we cannot reconcile Pat's testimony that Kent made weekly payments on the loan, which Pat claimed were redeposited in Macri's account, with the fact that no such weekly deposits are reflected on the bank record. Nor did Pat deny making payments to Cecil R. Bordine and to Travelers' Indemnity in American Central Insurance Company.He claimed that such payments were in respect of property damage resulting from an automobile accident in which his wife was at fault and for which *150 he received reimbursement from his own insurance company. Again, this is really an argument as to source and not a contested expenditure. In light of the fact that Pat was unable to recall the name of his insurance company or when the alleged reimbursement was made, we are not convinced that any such reimbursement occurred. Pat presented credible testimony to the effect that he spent only $1,200 in each of the years in issue for recreation and we have so found. The last item of expenditure which petitioners contest is that listed by respondent as "cash advances to Pat M. Ferruccio, Jr." Respondent used the source and application of funds method to reconstruct Pat, Jr.'s income during each of the years in question. As Pat, Jr., did not work and was supported by his father during these years, respondent determined that Pat, Jr., received cash distributions from his father equal to the excess of Pat, Jr.'s expenditures over other known available funds. The parties stipulated to some of the items (and the correct amounts thereof) which appeared in respondent's reconstruction of Pat, Jr.'s income. Petitioners presented no evidence to refute the remaining items or the amounts thereof. *151 Pat admitted that he supported Pat, Jr., during these years but he could not recall how much he spent in this regard. We have accordingly upheld respondent's determination that the excess of Pat, Jr.'s expenditures over known available funds originated in cash distributions from his father. The next area of dispute is in regard to additional unreported dividend income.During each of the years in issue Pat drove a Cadillac automobile which was owned by Liberty. Respondent determined that the fair rental value of $150 per month was dividend income to Pat. Petitioners do not contest respondent's determination of rental value, but argue that: (1) Pat used the car primarily for business purposes; and (2) Pat paid for the use of the car by virtue of having paid operating and maintenance expenses. The only support for petitioners' first contention is in Pat's testimony which was general and conclusory. Petitioners have not presented evidence which would enable us to even estimate the amount of time the car was used for company purposes. We must, therefore, agree with respondent's determination that the car was provided for Pat's personal benefit. There is no merit in petitioners' *152 second contention. The payment of costs incurred in operating and maintaining an automobile which was provided for Pat's personal benefit could in no way be considered payment for the use of the car. Even if Pat incurred operating and maintenance costs while using the car for company purposes, petitioners have not demonstrated the amount of such expenditures, or even that such expenditures exceeded the weekly automobile allowance provided by Liberty. Expenditures made by a corporation for the personal benefit of its stockholders, or the making available of corporate owned property to stockholders for their personal benefit, may result in the receipt by the stockholders of constructive dividends in amounts equal to the fair market value of the benefits conferred. John L. Ashby,50 T.C. 409 (1968); Challenge Manufacturing Co.,37 T.C. 650 (1962), and cases cited therein. Petitioners have not shown an absence of available earnings and profits out of which the amounts in question could have been paid and be properly treated as taxable dividends. See American Properties, Inc.,28 T.C. 1100 (1957), affd. 262 F. 2d 150 (9th Cir. 1958). *153 We hold that Pat received dividend income through the use of the company owned car in the following amounts: 1965
$1,200
1966
1,800
1967
1,800
1968
1,800
We also hold that Pat received dividend income in each of the years in question equal to the fair rental value of the house which was owned by Macri and which was used by Pat and Roxy as their personal residence.Petitioners argue that Pat paid for the use of the house by virtue of having paid various maintenance expenses. Again, we fail to see how expenditures incurred by a shareholder in maintaining property, held by his corporation solely for the purpose of conferring a personal benefit upon the shareholder, could be deemed payment for the use of that property.In any event, petitioners have not established the amount of such alleged expenditures. Respondent determined that the transfer, in 1965, of an apartment building by North (95 percent of the stock of which was owned by Pat) to P & R (100 percent of the stock of which was owned by Pat's sons, Pat Jr., and Rocco) resulted in dividend income to Pat in an amount equal to the building's fair market value of $33,430. Petitioners' contentions in this *154 regard are not entirely clear, but they apparently believe respondent's determination incorrect because: (1) Pat did not receive any cash as a result of the transaction; and (2) the transfer constituted a sale upon which North realized a loss. The apartment building was worth $33,430 in 1965 and it was sold by North to P & R for the consideration of one dollar plus the assumption by P & R of an outstanding mortgage indebtedness of $16,797.19. Had the form of the transaction been a sale by North to Pat, there clearly would have been a distribution to which section 301 applies. The amount of the distribution would have been equal to the excess of the building's fair market value over the sales price. See section 1.301-1(j), Income Tax Regs. Similarly, had there been a bargain sale by North to Pat's two sons, who were not shareholders of North, the result would have been a constructive distribution to Pat. Green v. United States,460 F. 2d 412, 419 (5th Cir. 1972), and cases cited therein. We do not think a different result should obtain merely because the sale was to a corporation wholly owned by Pat's two sons. Cf. Harry L. Epstein,53 T.C. 459 (1969); *155 Southern Ford Tractor Corporation,29 T.C. 833 (1958). Petitioners have made no effort to overcome respondent's determination that North had earnings and profits out of which a dividend could have been paid. We hold that Pat received a constructive dividend in 1965 of $16,631.81 (the difference between fair market value of the property transferred and the sales price). During the years 1965 and 1966 North maintained a savings account with the McKinley Savings and Loan Company. The following amounts were distributed to Pat from that account: 1965
$1,600.00
1966
700.84
Respondent maintains that the above amounts constituted dividend income to Pat. Petitioners maintain that the distributions were made to Pat for the purpose of making loans to customers. Petitioners simply have not carried their burden on this issue. Although Pat testified that the money was used to make loans, he did not identify any of the borrowers, nor did he even indicate that the "customers" were customers of North. No notes or other documents supporting the existence of these alleged loans were produced. We uphold respondent's determination that these amounts were *156 distributed to Pat for his personal benefit and constituted dividend income. In 1968 Macri transferred, without consideration, a building with a fair market value of $15,452.38 to Pat, Jr. Respondent determined that the distribution to Pat, Jr., was a constructive distribution to Pat and, therefore, asserted that Pat realized dividend income equal to the building's fair market value. Petitioners attempted to establish that the transfer was not without consideration but was in respect of an agreement between Macri and Roxy, executed in 1964, whereby Roxy surrendered her stock in Macri in exchange for Macri's promise to transfer this building to her son, Pat, Jr. Upon the evidence presented, we have been unable to make a finding with respect to the alleged redemption agreement. We do not agree with respondent, however, that the transfer of the building was a constructive distribution to Pat. Pat, Jr., owned 22 percent of Macri's outstanding stock and we believe the transfer of the building was with respect to his stock, and not with respect to the stock held by his father. Our findings, in summary form, are as follows: I. Reconstruction of Income
Using Source and Application of
Funds Method
1965
1966
1967
1968
A. Stipulated known available
$37,239.01
$11,219.75
$ 8,849.75
$16,574.46
funds
B. Additional available funds
1,432.00
5,725.00
1,000.00
determined herein
C. Total known available funds
$37,239.01
$12,651.75
$14,574.75
$17,574.46
D. Stipulated expenditures
$47,008.70
$20,792.69
$23,197.12
$396.17
E. Additional expenditures
11,829.30
9,760.04
8,825.78
11,562.80
determined herein
F.Total expenditures
$58,838.00
$30,552.73
$32,022.90
$42,958.97
G. Excess of expenditures over
$21,598.99
$17,900.98
$17,448.15
$25,384.51
known available funds
II. Unreported Dividend Income
A. Stipulated dividend income
$ 1,852.50
$ 3,540.00
$ 2,302.00
$ 1,976.50
B. Additional dividend income
22,431.81
$ 5,500.84
$ 4,800.00
$ 4,800.00
determined herein
C. Total unreported dividend
$24,284.31
$ 9,040.84
$ 7,102.00
$ 6,776.50
income
III. Other Unreported Income [1]
593.00
2,314.00
3,569.00
IV. Total Unreported Income [2]
$45,883.30
$27,534.82
$26,864.15
$35,730.01
*157 Petitioners assert that respondent is barred from assessing deficiencies for the years 1965, 1966 and 1967 by virtue of the three-year statute of limitations set forth in section 6501(a). Respondent argues that the six-year statute of limitations, set forth in section 6501(e)(1)(A), is *158 applicable. Although petitioners have the burden of refuting respondent's determination as to the amount of the deficiencies, respondent must carry the burden of proof in order to extend the statute of limitations beyond the normal three-year period. When respondent relies on section 6501(e)(1)(A), he must establish that petitioners omitted from gross income an amount in excess of 25 percent of gross income stated in the return. Our findings and discussion thus far have been based upon petitioners' failure to carry the burden of proof. We must now analyze the evidence from a different standpoint, i.e., in terms of whether respondent has carried his burden of proof. For each of the years 1966 and 1967, petitioners have stipulated to unreported income in excess of 25 percent of the gross income stated in the returns filed for those years. The requisite omission for each of the years 1966 and 1967 has, therefore, been established by petitioners' own admissions and respondent is not barred from assessing the deficiencies for those years. The amount of unreported income to which petitioners stipulated for 1965 is not in excess of 25 percent of the gross income stated in the return *159 filed for that year. Although petitioners have admitted to corporate distributions in an amount which would establish the requisite omission, they have argued that such distributions did not constitute income. After determining that petitioners had not established the absence of earnings and profits, out of which dividends could have been paid, we found against petitioners on that issue. However, respondent has not established the presence of earnings and profits, and since we are now considering the evidence in light of respondent's burden, we must find against him. [11]
The remainder of unreported income asserted by respondent for 1965 was determined by employing the source and application of funds method of reconstructing income. For 1965 the amount by which stipulated expenditures exceed stipulated known available funds is greater than 25 percent of reported income. However, petitioners merely stipulated to a minimum figure for known available funds and have attempted to establish a greater amount. When petitioners' evidence in this regard is viewed in the *160 absence of the presumption in respondent's favor, we are unable to conclude that the excess expenditures were not made from a cash hoard.Respondent has not introduced evidence to counter petitioners' claim of a cash hoard, nor has respondent attempted to establish the accuracy of his figure for known available funds. Recognizing the difficulty of negating all possible nontaxable sources, especially where books and records have not been made available, we would sustain respondent's determination if he had established a likely taxable source for the excess expenditures. Cf. Holland v. United States,348 U.S. 121 (1954); Armes v. Commissioner,448 F. 2d 972 (5th Cir. 1971), reversing in part and affirming in part a Memorandum Opinion of this Court. Respondent maintains that Liberty was a likely taxable source, but there are no facts of record from which we can conclude that Liberty was capable of generating substantial receipts in excess of those reported and accounted for on Liberty's books. [12] Cf. Armes,supra.
Respondent has not established the requisite *161 omission of gross income for 1965, and the assessment of a deficiency for that year is barred by the three-year statute of limitations.
Petitioners introduced no evidence to overcome respondent's determination that the addition to the tax under section 6653(a) is applicable for the years 1966 through 1968. Consequently, we are compelled to find for respondent on this issue. Mark Bixby,58 T.C. 757, 791-792 (1972).
Samuel J. Ferruccio and Joan R. Ferruccio, Docket No. 4012-72.
Respondent determined deficiencies in petitioners' Federal income tax and additions thereto as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a)
1965
$24,378.88
$1,218.94
1966
28,820.89
1,441.04
1967
31,550.20
1,577.51
1968
42,527.44
2,126.37
Various concessions having been made, the following issues remain for our determination: 1. Whether petitioners understated their income for the taxable years 1965 through 1968 in the amounts of $60,460, $69,358, $71,274 and $85,519, respectively. 2. Whether petitioner Samuel J. Ferruccio received additional income from Liberty Vending Company, Inc., during the taxable years 1965 through 1968 in *162 the amounts of $800, $1,200, $1,200 and $1,200, respectively. 3. Whether petitioners are liable for the addition to tax under section 6653(a) for the taxable years 1965 through 1968. 4.Whether the statute of limitations bars the assessment and collection of any deficiencies determined for the taxable years 1965 through 1967. FINDINGS OF FACT Some of the facts have been stipulated and except as hereinafter noted are so found. Samuel J. and Joan R. Ferruccio (hereafter referred to as Samuel and Joan, respectively), husband and wife, resided in Canton, Ohio, during the years in issue and at the time the petition in this case was filed. Petitioners timely filed joint income tax returns for each of the years 1965 through 1968 on which they reported gross income in the respective amounts of $18,981 (including gross sales), $6,432.04 (including dividends before exclusion), $7,385.12 and $7,903.69 (including dividends before exclusion). On April 11, 1972, respondent mailed a statutory notice of deficiency to petitioners covering the years 1965 through 1968. In April 1965 Samuel and his brother, Pat Ferruccio, formed the Liberty Vending Company (hereafter Liberty).Liberty *163 took over two separate businesses which had previously been operated by the two brothers as sole proprietorships. Upon incorporation, Samuel received 5 percent of Liberty's outstanding stock and he thereafter acquired, by gift, another 5 percent from his sister, Catherine Morello. In November 1968 Samuel transferred all of his stock in Liberty to his nephews, Patrick M. Ferruccio, Jr., and Rocco Ferruccio. Throughout the years in question Samuel was employed by Liberty as its vice president. Upon advice of counsel, Samuel and Joan declined to provide respondent's agents with records regarding their income for the years 1965 through 1968. Consequently, respondent used third party records to reconstruct income for those years.Employing the source and application of funds method of reconstruction, respondent determined that known cash expenditures exceeded known available funds [13] by the following amounts: [1]4 1965
$ 8,640
1966
12,023
1967
10,746
1968
20,333
*164 The parties have agreed on all of the items (and the correct amounts thereof) which appeared in respondent's reconstruction of income. However, petitioners have not agreed that the stipulated figure for known available funds represents all nontaxable funds available to them. The stipulation of facts, encompassing that agreement, indicates that Samuel and Joan had known available funds and made total expenditures in at least the following amounts: 1965
1966
1967
1968
Total of Available Funds
which
have been Stipulated
$29,960.47
n1 15,379.90
n1 $44,367.00
$46,503.87
Total of Expenditures which
have been Stipulated
35,015.44
22,327.67
53,457.41
48,410.75
*165 Bernice Onesto resided with Samuel and Joan during the years in question and during 1968 she made gifts totaling $4,500 to Samuel and Joan for the purpose of enabling them to buy new furniture for their home.This amount was not included in the stipulated figure for known available funds. In addition to the understatements determined by using the source and application of funds method of reconstructing income, respondent determined that Samuel received unreported income in the following amounts, arising out of his personal use of two automobiles owned by Liberty: 1965
1966
1967
1968
Buick LeSabre
$ 800
$1,200
$1,200
$1,200
Buick Riviera
1,200
1,800
1,800
1,800
The parties have stipulated that Samuel had income from the use of the Buick Riviera as follows: 1965
$240
1966
360
1967
360
1968
360
We find that Samuel did not at any time use the Buick LeSabre. OPINION Samuel and Joan Ferruccio declined to provide respondent with records pertaining to their income for the years 1965 through 1968. Respondent, therefore, reconstructed their income for those years, using third party records. Employing the source and *166 application of funds method of reconstructing income, respondent determined that Samuel and Joan had understated their income in each of the years in issue. Additionally, respondent determined that Samuel received unreported income during each of the years in issue, arising from his use of two company owned automobiles. Respondent's determinations are presumptively correct and petitioners have the burden of proof. Welch v. Helvering,supra. There has been no showing that respondent's determinations were arbitrary and excessive so as to cause the presumption in respondent's favor to disappear under the holding of Helvering v. Taylor,supra.
The source and application of funds method of reconstructing income is based on the assumption that the amount by which a taxpayer's application of funds during a taxable period exceeds his known available funds [15] for that same period has, absent some explanation by the taxpayer, taxable origins. As explanation, the taxpayer may show that the difference between the total for the application of funds and the total for known sources of funds is attributable to such nontaxable items as loans, gifts, *167 inheritances, or assets on hand at the beginning of the taxable period. [1]6 Petitioners argue that respondent's reconstruction failed to give them credit for an additional nontaxable source of income, in the amount of $4,500, in the year 1968. After stipulation, none of the expenditures asserted by respondent remain in issue. Petitioners received cash gifts, totaling $4,500, from Joan's mother in 1968. We agree with petitioners that this amount is an additional nontaxable source for that year. Respondent asserted that Samuel received additional unreported income arising out of his personal use of two company owned automobiles. The parties have stipulated to the correct amount of income arising out of Samuel's personal use of a Buick Riviera. Petitioners established that Samuel did not use a Buick LeSabre. Our findings in summary form are as follows: I. Reconstruction of Income
1965
1966
1967
1968
Using Source and Application
of Funds Method
A. Stipulated known
$29,906.47
$15,379.90
$44,367.00
$46,503.87
available funds
B. Additional available
4,500.00
funds determined herein
C.Total known available
$29,960.47
$15,379.90
$44,367.00
$51,003.87
funds
D. Stipulated expenditures
$35,015.44
$22,327.67
$53,457.41
$48,410.75
E. Additional expenditures
determined herein
F. Total expenditures
$35,015.44
$22,327.67
$53,457.41
$48,410.75
G. Excess of expenditures
$ 5,054.97
$ 6,947.77
$ 9,090.41
$ (2,593.12)
over known available funds
II. Additional Unreported
Income
A. Personal Use of Company
$ 240.00
$ 360.00
$ 360.00
$ 360.00
Owned Buick Riviera
III. Total Unreported
$ 5,294.97
$ 7,307.77
$ 9,450.41
$360.00
Income
*168 Petitioners assert that respondent is barred from assessing deficiencies for the years 1965, 1966 and 1967 by virtue of the three-year statute of limitations set forth in section 6501(a). Respondent argues that the six-year statute of limitations, set forth in section 6501(e)(1)(A), is applicable. Although petitioners have the burden of refuting respondent's determination as to the amount of the deficiencies, respondent must carry the burden of proof in order to extend the statute of limitations beyond the normal three-year period. When respondent relies on section 6501(e)(1)(A), he must establish that petitioners omitted from gross income an amount in excess of 25 percent of gross income stated in the return. Our findings and discussion thus far have been based upon petitioners' failure to carry the burden of proof. We must now analyze the evidence from a different stand-point, i.e., in terms of whether respondent has carried his burden of proof. For each of the years 1965, 1966 and 1967 the amount by which stipulated expenditures exceeds stipulated known available funds is greater than 25 percent of reported income. However, petitioners merely stipulated to minimum figures *169 for known available funds and have not agreed that the stipulated figures represent all nontaxable funds available to them. Respondent has not attempted to establish the absence of other nontaxable sources. Recognizing the difficulty of negating all possible nontaxable sources, especially where books and records have not been made available, we would sustain respondent's determination if he had established a likely taxable source for the excess expenditures. Cf. Holland v. United States,supra;Armes v. Commissioner,supra.Respondent maintains that Liberty was a likely taxable source, but there are no facts of record from which we can conclude that Liberty was capable of generating substantial receipts in excess of those reported and accounted for on Liberty's books. [17] Cf. Armes,supra.
Respondent has not established the requisite omissions of gross income for the years 1965, 1966 and 1967, and assessment of deficiencies for these years is barred by the three-year statute of limitations. Petitioners introduced no evidence to overcome respondent's *170 determination that the addition to the tax under section 6653(a) is applicable for the year 1968. Consequently, we are compelled to find for respondent on this issue. Mark Bixby,supra.
Rocco A. Ferruccio, Docket No. 4014-72.
Respondent determined deficiencies in petitioner's Federal income tax and additions thereto as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1963
$ 724.00
$ 181.00
$ 36.20
1965
28,652.40
7,163.10
1,432.62
1966
37,673.34
1,883.67
1967
37,300.23
1,865.01
1968
61,874.71
3,093.74
Various concessions having been made, the following issues remain for our determination. 1. Whether petitioner understated his income for the taxable years 1965 through 1968 in the amounts of $60,460, $69,358, $71,274 and $85,519, respectively. 2. Whether the fair market value of a 1963 Pontiac Bonneville, which petitioner won in a raffle, should be included in his income for 1963. 3. Whether petitioner is liable for the addition to tax under section 6651(a) for the taxable years 1963 and 1965 and the addition to tax under section 6653(a) for the taxable years 1963 and *171 1965 through 1968. 4. Whether the statute of limitations bars the assessment and collection of any deficiencies determined for the taxable years 1963 and 1965 through 1967. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Rocco A. Ferruccio (hereafter referred to as Rocco) resided in Canton, Ohio, during the years in issue and at the time the petition in this case was filed. Rocco timely filed individual income tax returns for the years 1966, 1967 and 1968 on which he reported gross income (including dividends before exclusion) in the respective amounts of $7,387.96, $2,451.46, and $2,207.20. Rocco did not file income tax returns for the years 1963 and 1965. On Aprill 11, 1972, respondent mailed a statutory notice of deficiency to Rocco covering the years 1963, 1965, 1966, 1967 and 1968. In 1963 Rocco won a 1963 Pontiac Bonneville in a raffle, which he sold within a few days of delivery for $2,550. The winning raffle ticket had been purchased in Rocco's name by his father.The fair market value of the automobile at the time it was received by Rocco was $4,000. Rocco owned fifty percent of the stock of P & R Enterprizes, Inc. (hereafter *172 referred to as P & R). After completing his education in the early part of 1965, Rocco, as P & R's president, became actively engaged in directing P & R's business affairs. P & R owned and operated an apartment building and a cocktail lounge. During the years 1965 through 1968 Rocco was also a partner in two partnerships: the Aid Bailbonding Company and the Coffee Break Bar. Upon advice of counsel, Rocco declined to provide respondent's agents with records regarding his income for the years 1965 through 1968. Consequently, respondent used third party records to reconstruct Rocco's income for those years. Employing the source and application of funds method of reconstruction, respondent determined that Rocco's known cash expenditures exceeded his known available funds [18] by the following amounts: [19]
1965
$12,000
1966
23,274
1967
26,814
1968
25,031
*173 The parties have agreed on many of the items (and the correct amounts thereof) which appeared in respondent's reconstruction of income. The stipulation of facts, encompassing that agreement, indicates that Rocco had known available funds and made expenditures in at least the following amounts: 1965
1966
1967
1968
Total of available
funds which have
been stipulated
$3,523.43
$16,224.83
$ 6,520.33
$27,641.53
Total of expendi-
tures which have
been stipulated
9,215.57
25,952.33
22,092.25
36,031.81
The items which appeared in respondent's reconstruction as expenditures which were not stipulated to are as follows: 1965
1966
1967
1968
Loan repayment -
Harter Bank
1964 Buick
$1,372.56
$1,497.82
Down payment on
real estate
located in
Ravenna, Ohio
$3,475.00
Cash contribu-
tions to P & R
1,969.00
3,301.00
$4,885.00
4,129.00
Wedding Expense -
Honeymoon Trip
1,900.00
Rocco did not own a 1964 Buick in 1965 and 1966 and did not make loan payments during those years with respect to a 1964 Buick. In 1968 Rocco and Leonard Mostello (hereafter referred to as Mostello) agreed to join together *174 in an attempt to purchase a parcel of real estate, located in Ravenna, Ohio, which was to be sold in a sheriff's sale. Mostello was unable to attend the sale but Rocco did attend and was successful in purchasing the property. Rocco wrote a personal check in the amount of $3,475 for the down payment and the property was placed in his name. Several days later Mostello paid Rocco his one-half share of the down payment in cash. On June 11, 1970, Rocco conveyed, by quit claim deed, an undivided one-half interest in the property to Mostello. Rocco was married in 1965 and after the wedding Rocco and his wife traveled to Europe where they visited five countries during a period of 21 days. The total cost incurred in making this trip was $1,900. During the years in issue Rocco made capital contributions to P & R in the following amounts: 1965
$1,969
1966
3,631
1967
4,885
1968
4,129
Respondent's computation of Rocco's known available funds for 1965 included an item described as "cash wedding gifts" in the amount of $3,500. Although the parties have stipulated that Rocco received at least $3,500, Rocco asserts that he received a total of $9,500 in cash wedding *175 gifts. Approximately 1,000 people attended Rocco's wedding reception, some of whom presented cash gifts directly to Rocco during the reception. Others gave cash to Rocco's father to hold for Rocco. Additionally, there were people who could not attend the reception but who sent cash gifts by mail. We find that Rocco received cash wedding gifts during 1965 in the total amount of $6,000. OPINION Rocco Ferruccio declined to provide respondent with records pertaining to his income for the years 1965 through 1968. Respondent, therefore, reconstructed his income for those years, using third party records. Employing the source and application of funds method of reconstructing income, respondent determined that Rocco had understated his income in each of the years in issue. Additionally, respondent determined that Rocco had $4,500 of income in 1963 as a result of having won a Pontiac Bonneville in a raffle during that year. Rocco did not file an income tax return for 1963. Respondent's determinations are presumptively correct and petitioner has the burden of proof. Welch v. Helvering,supra. There has been no showing that respondent's determinations were *176 arbitrary and excessive so as to cause the presumption in respondent's favor to disappear under the holding of Helvering v. Taylor,supra.
The source and application of funds method of reconstructing income is based on the assumption that the amount by which a taxpayer's application of funds during a taxable period exceeds his known available funds [20] for that same period has, absent some explanation by the taxpayer, taxable origins. As explanation, the taxpayer may show that the difference between the total for the application of funds and the total for known sources of funds is attributable to such nontaxable items as loans, gifts, inheritances, or assets on hand at the beginning of the taxable period. [21]
Petitioner argues that respondent's reconstruction failed to give him credit for various nontaxable sources of income which he claims were available for disposition during the years in issue. Petitioner also contests various expenditures which *177 have been asserted by respondent. With respect to alleged additional sources of income, petitioner attempted to establish that he surrendered an insurance policy for its cash value of $2,079 in 1962.The only evidence offered with respect to this matter was in the form of Rocco's testimony which we found to be vague, indefinite and self-serving and upon which we have placed little value. Moreover, even if this amount was received by Rocco in 1962, there is no evidence that it was still available for disposition during the years in issue. In fact Rocco testified that he could not remember when he spent the money. Rocco's testimony convinces us that he received somewhat more than $3,500 in cash wedding gifts but we are not convinced that he received a total of $9,500. No records were kept with respect to these gifts and Rocco admitted that $9,500 was a rough approximation based upon his recollection. We have found cash wedding gifts totaling $6,000; the excess of that amount over the $3,500 determined by respondent is an additional nontaxable source for 1965. Several of the expenditures asserted by respondent are still in issue. Petitioner produced no evidence indicating *178 that he did not make cash contributions to P & R during each of the years in issue. Nor was this point argued by petitioner on brief. We have accordingly found that cash contributions were made to P & R in the amounts determined by respondent. At trial, petitioner admitted that he spent $1,900 on a wedding trip in 1965 and we have so found. Petitioner established that he did not make loan payments on a 1964 Buick during the years 1965 and 1966. In 1968 petitioner made a down payment of $3,475 on a parcel of real estate located in Ravenna, Ohio, Although the property was purchased jointly by Rocco and Leonard Mostello, it was originally placed in Rocco's name. Several days after making the down payment, Mostello reimbursed Rocco for his one-half share of the down payment. Petitioner argues that only one-half of the down payment should be listed as an expenditure. Although the net result is the same, we think it more accurate to say that Rocco expended the full $3,475 but that the money received from Mostello was an additional nontaxable source of funds in 1968. In reconstructing petitioner's income, we will, therefore, include $3,475 as an expenditure in 1968 but we will add *179 $1,737.50 to known available funds for that year. In 1963 Rocco's father purchased a raffle ticket in Rocco's name, as a result of which Rocco won a 1963 Pontiac Bonneville. Respondent asserts that Rocco received income equal to the fair market value of the car. Petitioner maintains that since his father paid for the winning ticket, the income is attributable to his father. The automobile was clearly a prize within the meaning of section 74(a). When a prize is not made in money but is made in goods, the fair market value of the goods is the amount to be included in income. Section 1.74-1(a)(2), Income Tax Regs.
Petitioner's reliance on Rev. Rul. 58-127, 1958-1 C.B. 42, is misplaced. That ruling holds that where a taxpayer submits an entry in an essay contest and wins a prize payable to the taxpayer's child, the prize is includible in the taxpayer's gross income. In that situation the parent earned the income and could not escape taxation by assigning the income to another. The situation presented here is entirely different and we think is more accurately covered in Rev. Rul. 55-638, 1955-2 C.B. 35, which states: The proceeds from a sweepstakes *180 ticket acquired by gift before it became a winning ticket are includible in the gross income of the donee to the extent in excess of the value of the gift.The established selling price paid for the ticket by the donor constitutes the value of the gift which is excludable from gross income under section 102 of the Internal Revenue Code of 1954. See Max Silver v. Commissioner,42 B.T.A. 461, acquiescence, C.B. 1940-2, 7. Since petitioner has not established the price paid for the ticket, the full fair market value of the automobile is includible in petitioner's income. Although respondent asserted that the fair market value of the automobile was $4,500, we have found it to be $4,000. See Lawrence W. McCoy,38 T.C. 841 (1962). Our findings in summary form are as follows: 1963
1965
1966
1967
1968
I. Reconstruction of
Income Using Source
and Application of
Funds Method.
A. Stipulated known
$ 3,523.43
$16,224.83
$ 6,520.33
$27,641.53
available funds
B. Additional
2,500.00
1,737.50
available funds
determined herein
C. Total known
$ 6,023.43
$ 6,520.33
$29,379.03
available funds
$16,224.83
D. Stipulated
9,215.57
25,952.33
22,092.25
36,031.81
expenditures
E.Additional
3,869.00
3,361.00
4,885.00
7,604.00
expenditures
determined herein
F. Total expenditures
$13,084.57
$29,313.33
$26,977.25
$43,635.81
G. Excess of
expenditures over
known available
funds
$ 7,061.14
$13,088.50
$20,456.92
$14,256.78
II. Other Unreported
Income
A. Prize automobile
$4,000
B. Distributable
$ 1,355.00
$ 2,183.00
share of partnership
[1] income
C. Capital gain from
3,326.00
partnership [2]
distribution
III. Total
$4,000
$ 7,061.14
$13,088.50
$21,811.92
$19,765.78
Unreported Income [3]
*181 *182 Petitioner asserts that respondent is barred from assessing deficiencies for the years 1963, 1965, 1966 and 1967 by virtue of the three-year statute of limitations set forth in section 6501(a). Since petitioner did not file returns for the years 1963 and 1965, those years are still open. Section 6501(d). Respondent argues that the six-year statute of limitations, set forth in 6501(e)(1)(A), is applicable for the years 1966 and 1967. When respondent relies on section 6501(e)(1)(A) he must establish that petitioner omitted from gross income an amount in excess of 25 percent of gross income stated in the return. For the year 1967, petitioner has stipulated to unreported income in excess of 25 percent of gross income stated in the return filed for that year. For the year 1966, the amount, by which stipulated expenditures exceed stipulated known available funds, is greater than 25 percent of reported income. However, petitioner merely stipulated to a minimum figure for known available funds and he has not agreed that the stipulated figure represents all nontaxable funds which were available to him. Respondent has not attempted to establish the absence of other nontaxable sources. *183 Recognizing the difficulty of negating all possible nontaxable sources, especially where books and records have not been made available, we would sustain respondent's determination if he had established a likely taxable source for the excess expenditures. Cf. Holland v. United States,supra;Ames v. Commissioner, supra.Respondent maintains that P & R was a likely taxable source, but there are no facts of record from which we can conclude that P & R was capable of generating substantial receipts in excess of those reported and accounted for on its books. [22] Cf. Armes,supra.
Therefore, the only year for which the assessment of a deficiency is barred by the three-year statute of limitations is 1966. Petitioners introduced no evidence to overcome respondent's determination that the addition to the tax under section 6653(a) is applicable for the years 1963, 1965, 1967 and 1968.Consequently, we are compelled to find for respondent on this issue. Mark Bixby,supra.
Nor has petitioner established that his failure to file returns for the years *184 1963 and 1965 was due to reasonable cause and not due to willful neglect. The addition to the tax under section 6651(a) is, therefore, appropriate. William M. Bebb,36 T.C. 170 (1961). Liberty Vending Company, Inc., Docket No. 4039-72.
Respondent determined deficiencies in petitioner's Federal income tax and additions thereto as follows: [23]
Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1965
$19,609.94
$918.02
$ 918.02
1966
24,548.47
1,200.06
1967
30,601.48
1,530.07
1968
25,424.58
1,271.23
Various concessions having been made, the following issues remain for our determination: 1. Whether petitioner understated gross receipts for the taxable years 1965 through 1968 in the amounts of $30,725, $38,270, $45,234 and $40,122, respectively. *185 2. Whether respondent erred in disallowing deductions for rental expense for the taxable years 1965 through 1968. 3.Whether respondent erred in disallowing deductions for heat, light, power and telephone expenses for the taxable years 1965 through 1968 in the amounts of $1,565, $3,208, $4,828 and $7,170, respectively. 4. Whether respondent erred in disallowing deductions for automobile expenses for the taxable years 1965 through 1968 in the amounts of $2,536, $5,871, $4,470, and $4,098, respectively. 5. Whether respondent erred in disallowing deductions for depreciation on automobiles for the years 1965 through 1968 in the amounts of $1,797, $2,082, $3,600, and $3,700, respectively. 6. Whether respondent erred in disallowing deductions for certain cash expenditures for the taxable years 1965 through 1968 in the amounts of $7,001, $8,461, $8,597 and $8,821, respectively.
7. Whether petitioner incurred a net operating loss for the taxable year 1968. 8. Whether petitioner is liable for the addition to tax under section 6651(a) for the taxable year 1965 and the addition to tax under section 6653(a) for the taxable years 1965 through 1968. 9. Whether the statute *186 of limitations bars the assessment and collection of any deficiencies determined for the taxable years 1965 through 1967. FINDINGS OF FACT Some of the facts have been stipulated and are so found.
Liberty Vending Company, Inc. (hereafter referred to as Liberty or petitioner), is a corporation organized and existing under the laws of Ohio. During the years in issue and at the time of filing the petition herein, Liberty's principal place of business was Canton, Ohio. Liberty's Federal income tax returns, based on the cash receipts and disbursements method of accounting, were filed as follows: Year
Date Filed
Place Filed
1965
April 6, 1966
District Director of Internal
Revenue, Cleveland, Ohio
1966
March 15, 1967
District Director of Internal
Revenue, Cleveland, Ohio
1967
March 19, 1968
District Director of Internal
Revenue, Cleveland, Ohio
1968
March 17, 1969
Service Center, Covington, Ky.
Respondent mailed a statutory notice of deficiency to Liberty covering the years 1965 through 1968 on March 14, 1972. Liberty was incorporated in April 1965. Originally, its common stock was issued to the following people in the following *187 amounts: Name
No. of Shares
Pat Ferruccio
75
Samuel Ferruccio
5
Catherine Morello
(sister of Pat Ferruccio)
5
Connie Gamble
(sister of Pat Ferruccio)
5
Rocco Ferruccio
5
Patrick M. Ferruccio
5
Subsequent to the original issuance of the stock, Catherine Morello and Connie Gamble transferred their five shares of stock to Samuel and Rocco Ferruccio, respectively. Pat Ferruccio, Sr., transferred five shares to Patrick M. Ferruccio. On November 1, 1968, Samuel Ferruccio transferred his ten shares to Rocco Ferruccio and Patrick M. Ferruccio, Jr., each of whom received five shares. Pat Ferruccio, Sr. (hereafter Pat), served as Liberty's president and Samuel Ferruccio (hereafter Samuel) served as its vice president.
During the years in issue Liberty owned and operated various types of vending machines (including juke boxes and cigarette, candy and pinball machines). Liberty's cigarette and candy machines were serviced by routemen whose duties included refilling the machines, collecting the money from the coin boxes and making minor adjustments and repairs to the machines. Expenses incurred by the routemen were paid from the cash collected from the machines. *188 A daily sales sheet was maintained for each routeman on which was recorded the amount of merchandize taken out by the routeman at the beginning of the day and the amount of merchandize returned by the routeman at the end of the day. The difference between those two amounts was recorded on the sales sheet as the amount of merchandize sold. That amount was then multiplied by the selling price to arrive at the amount of money which should have been collected and turned in by the routeman. When expenses were paid from the cash collected from the machines, the amount of cash turned in by the routeman was, of course, less than the amount which was collected. Samuel serviced the juke boxes and pinball machines. He collected the money from these machines and made weekly deposits of the money collected. He, too, incurred expenses which were paid from the cash collected. Pat was responsible for maintaining Liberty's bank accounts. The money turned in by the routemen was deposited weekly. Each week Pat totaled the cash expenditures for the week (including those made by the routemen) and wrote a check to cash for the total. The check written to cash was then deposited. Other expenses *189 were paid directly by check. Liberty's books and records were maintained by Larry Miller (hereafter referred to as Miller), as associate with an accounting firm in Canton, Ohio. Miller also prepared Liberty's income tax returns for each of the years in issue. Miller computed Liberty's gross receipts by reference to bank deposits; he did not review the sales sheets maintained for the routemen. For 1967 and 1968 Miller subtracted the amount of sales tax from bank deposits in order to arrive at gross receipts. Liberty reported gross receipts in the following amounts: 1965
$ 74,230
1966
119,723
1967
136,842
1968
143,454
Liberty now concedes that its gross receipts per bank deposits were as follows: 1965
$ 74,230
1966
119,929
1967
139,097
1968
147,477
Miller periodically reviewed Liberty's cancelled checks in order to record expenditures on the company's books. The only "bills" or "receipts" which Miller saw were those which had been attached to the weekly checks drawn to cash. Some of those attachments were merely slips of paper with notations such as "Gas $8.00 -- 7/15/68." Some listed the name of the payee but did not list *190 the name of the payor. Miller, nevertheless, assumed that the amount noted on each slip of paper represented an expense incurred by Liberty and he recorded the expense on the company's books and took deductions therefor on the income tax returns. Respondent has disallowed some of these deductions for cash expenditures because of a lack of substantiation. The following chart indicates deductions claimed by Liberty for cash expenditures and the amounts which have been disallowed by respondent: 1965
1966
1967
Amount
Amount
Amount
Amount
Amount
Amount
Claimed
Disallowed
Claimed
Disallowed
Claimed
Disallowed
Commissions
$ 3,485
$ 253
$ 4,737
$ 680
$ 2,540
$ 283
Parts [1]
4,546
4,015
3,574
2,521
3,814
2,763
Records [1]
3,322
704
3,840
947
5,633
1,197
Maintenance
1,946
625
3,099
2,277
6,109
3,105
Cigarette Purchases
22,608
54
40,673
45,582
[1]
Miscellaneous
194
101
224
112
442
355
Other [2]
1,249
1,924
502
Truck and Rental
Expense
146
350
268
Advertising
810
1,312
2,359
124
1968
Amount
Amount
Claimed
Disallowed
Commissions
$4,256
$ 133
Parts [1]
2,638
Records [1]
2,145
Maintenance
4,249
2,748
Cigarette Purchases [1]
Miscellaneous
199
128
Other [2]
698
Truck and Rental Expense
51
Advertising
1,579
280
*191 Miller never reviewed bills or statements for expenses which were paid by check. He assumed that checks drawn to Ohio Bell Telephone Company, Ohio Power Company and the East Ohio Gas Company were for deductible expenses incurred by Liberty. He, therefore, totaled all such checks and claimed deductions for the totals. The following amounts were deducted for heat, light, power and telephone expenses and were disallowed in full by respondent: 1965
$1,565
1966
3,208
1967
4,828
1968
7,170
Liberty owned and operated several motor vehicles for which it claimed depreciation deductions and operating expense deductions. The operating expense deductions were denied in full *192 for lack of substantiation. The following chart sets forth the amounts of depreciation claimed and the amounts disallowed by respondent: 1965
1966
1967
1968
Auto Depreciation Claimed on
Return
1964 Buick
$ 825.00
$ 733.33
$
$
1964 Buick Riviera
874.98
356.69
1960 Volkswagon
252.00
336.00
1966 Cadillac
97.22
1967 Cadillac
125.00
1,500.00
1965 Chevrolet Truck
125.00
500.00
500.00
1963 Chevrolet Station Wagon
41.66
166.67
1966 Buick Riviera
366.68
1,100.00
1,100.00
1966 Buick LeSabre
500.00
1,000.00
1,000.00
1965 Chevrolet Station Wagon
1968 Cadillac
1,600.00
1969 Ford Truck
694.45
Total Auto Depreciation Claimed
$2,049.20
$2,584.36
$4,266.67
$4,89.45
Depreciation Disallowed
1,797.00
2,082.00
3,600.00
3,700.00
Depreciation Allowed
$ 252.20
$ 502.36
$ 666.67
$1,194.45
Liberty leased its business quarters from Macri Corporation (Macri). For each of the years in issue Liberty, a cash basis taxpayer, claimed a deduction for rent which had accrued but which had not been paid. Respondent denied each such deduction. OPINION Having determined that Liberty's books and records were *193 inadequate, respondent recomputed Liberty's gross receipts by reference to bank deposits and cash expenditures. Specifically, respondent added to bank deposits: (1) unaccounted for cash advances made directly to shareholders; [24] (2) cash receipts for cigarette and candy sales which were recorded on Liberty's books but which were not deposited; and (3) cash receipts which were advanced directly to corporate officers without haing been deposited. *194 Respondent also disallowed various deductions claimed by Liberty.The first category of deductions disallowed by respondent involves cash expenditures which respondent asserts were not substantiated. Also for lack of substantiation respondent denied in full all deductions claimed for heat, light, power, telephone and automobile expenses, which were paid by check. Respondent disallowed, in part, deductions for depreciation on automobiles. Finally, respondent disallowed deductions for rent which had been accrued on Liberty's books but which had not been paid. As a result of the foregoing adjustments, respondent determined that Liberty did not sustain an operating loss in 1968 and, therefore, denied the claimed carryback to 1965 and 1966. Respondent acted within his authority in reconstructing petitioner's gross receipts through the use of the bank deposits and cash expenditures method. Respondent is not bound to accept a taxpayer's returns or its books at face value. Holland v. United States,supra;JohnHarper,54 T.C. 1121 (1970). Use of this method is proper even when the taxpayer keeps books and records which support his return *195 as filed. Campbell v. Guetersloh,287 F. 2d 878 (5th Cir. 1961); John Harper,supra.Petitioner did not provide this Court with its books and records for the years in issue [25] and the testimony of petitioner's officers and accountant, by itself, does not demonstrate the adequacy of its books and records. David Courtney,28 T.C. 658, 665 (1957). Except with respect to the increase in deficiencies, respondent's determinations are presumptively correct and petitioner has the burden of proof. Welch v. Helvering,supra;Rule 142, Tax Court Rules of Practice and Procedure. There has been no showing that respondent's determinations were arbitrary and excessive so as to shift the burden of proof to respondent under the holding of Helvering v. Taylor,supra.
The years 1965, 1966 and 1967, however, are not open to respondent *196 unless the six-year statute of limitations set forth in section 6501(e)(1) is applicable. Respondent has the burden of proving tat Liberty omitted from gross income [26] for each year an amount in excess of 25 percent of the amount of gross income stated in the return filed for each such year. C.A. Reis,1 T.C. 9 (1942). Respondent has not carried this burden. The parties have stipulated to the correct amount of gross receipts as reflected in bank deposits. Using the source and application of funds method, we have found that Pat and Samuel each understated their individual incomes for each of the years 1965 through 1967. Except with respect to small sums of income which Samuel and Pat stipulated to, they each testified that the sole source of their income during these years was Liberty. Respondent would, therefore, have us add to Liberty's gross receipts, as determined by bank deposits, unaccounted for cash advances made directly to Pat and Samuel equal in amount to their understatements as determined herein *197 (see opinion in docket Nos. 4013-72, 4041-72 and 4012-72). However, our decision that these individual petitioners understated their incomes was based entirely on their failure to overcome the presumption of correctness attached to respondent's determination. Respondent did not introduce any evidence in this regard and he cannot rely on the failure of the individual petitioners to meet their burden in the context of the individual dockets in order to meet his own burden with respect to this corporation. Nor did respondent introduce evidence in support of his determination of other cash receipts which he claims were not deposited and which he added to bank deposits in computing gross receipts. Consequently, for the purppose of deciding whether respondent has established, for each of the years 1965 through 1967, an omission of gross income in excess of 25 percent of the gross income stated in the return for each such year, we have considered only the stipulated gross receipts per bank deposits. As is illustrated by the following chart, respondent has not established a 25 percent omission for any of the years 1965, 1966 and 1967 and assessment of deficiencies for these years is barred *198 by the three-year statute of limitations: 1965
1966
1967
Gross Receipts Reflected in Bank
Deposits (stipulated by the
parties)
$74,230.00
$119,929.00
$139,097.00
Reported Gross Receipts
74,230.00
119,723.00
136,842.00
Understatement
0
$ 206.00
$ 2,255.00
25% of Reported Gross Receipts
$18,557.50
$29,930.75
$ 34,210.50
The notice of deficiency for 1968 was issued within three years of the date the return for that year was filed. Except with respect to the increased deficiency, asserted in respondent's amended answer, petitioner has the burden of proof. The parties have stipulated to the correct amount of gross receipts as reflected in bank deposits. Using the source and application of funds method, we have found that Pat understated his individual income for 1968. Pat testified that, except for small amounts of income stipulated to, Liberty was the sole source of his income during 1968. Petitioner has not otherwise established that the source of Pat's understatement was not cash receipts of the corporation advanced directly to Pat, as determined by respondent. We, therefore, agree with respondent that the amount of Pat's understatement *199 for 1968 should be included in Liberty's gross receipts. However, since respondent has not carried the burden of proof with respect to the increased deficiency, we sustain only respondent's original determination of a cash advance to Pat of $12,109. Since we found that Samuel had adequate nontaxable funds to cover all of his expenditures for 1968, there is no basis for upholding respondent's determination that the amount of Samuel's "understatement" should be included in Liberty's gross receipts for 1968. Finally, we uphold respondent's determination that the amount of cash receipts for cigarette and candy sales, recorded on Liberty's books but not deposited, should be added to bank deposits in arriving at gross receipts. Petitioner maintains that these amounts were never actually received, but represented discounts given to owners of the facilities where its vending machines were located. Petitioner introduced not one shred of evidence in support of this contention and we have found the testimony in this regard confusing and unconvincing. We now turn to the various deductions disallowed by respondent. Petitioner has not established deductible cash expenditures in excess *200 of those allowed by respondent. The few "receipts" which were introduced as a sample of the documentation which petitioner maintains was available are of highly questionable value. Although petitioner did not introduce any bills or receipts for telephone, heat, light and power expenses, we believe respondent erred in disallowing deductions for these expenses in full.We are convinced that petitioner incurred some expense for those items in the ordinary course of its business. Bearing heavily against petitioner, upon whom the burden of proof rests, we find that petitioner's total deductible expenses for telephone, heat, light and power during 1968 were $2,500. Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930). The only support for depreciation deductions in excess of the amounts allowed by respondent is in the form of testimony to the effect that petitioner did use motor vehicles in its business. No specific vehicles or specific uses have been described. It is not clear whether the 1968 Cadillac, for which a depreciation deduction was claimed in 1968, was the same Cadillac which was made available for Pat's personal use, and for which we found dividend income *201 to Pat. If it is the same automobile, a depreciation deduction would not be appropriate. See John L. Ashby,supra.On the record presented, we have no alternative but to sustain respondent's determination as to the amount of allowable depreciation. Respondent erred, however, in disallowing in full the deduction claimed for automobile operating expenses. Although petitioner has not substantiated expenditures in the amount claimed as a deduction, we are convinced that some expense was incurred in the operation of automobiles in the ordinary course of petitioner's business. Bearing heavily against petitioner, upon whom the burden of proof rests, we hold that in 1968 petitioner incurred deductible expenses in the operation of automobiles totaling $1,000. Cohan v. Commissioner,supra.
There is no merit to petitioner's claim that it was entitled to deduct rental expense accrued on its books but which had not been paid. Petitioner, a cash basis taxpayer, may deduct expenditures only in the year when actually made. Sections 1.446-1(c) and 1.461-1(a), Income Tax Regs.
One result of the foregoing determinations is that petitioner did not *202 incur an operating loss in 1968. There is, therefore, no carryback to 1965 and 1966. Those years are not closed for the purpose of making this adjustment. Section 6501(h). Petitioner introduced no evidence to overcome respondent's determination that the addition to the tax under section 6653(a) is applicable for the year 1968. Consequently, we are compelled to find for respondent in this issue.Mark Bixby,supra.
P & R Enterprises, Inc., Docket No. 4010-72. Respondent determined deficiencies in petitioner's Federal income tax and additions thereto as follows: [27]
Addition to Tax
Year
Deficiency
Section 6653(a)
1965
$2,584.62
$129.23
1966
2,575.22
128.76
1967
7,075.62
353.78
1968
7,487.35
374.37
Various concessions having been made, the following issues remain for our determination: 1. Whether petitioner understated its gross income for *203 the taxable years 1965 through 1968 in the amounts of $6,997, $13,754, $20,457 and $15,994, respectively. 2. Whether petitioner realized income from the forgiveness of indebtedness in the amount of $9,000 in the taxable year 1968. 3. Whether certain amounts claimed as deductions for maintenance and repair expenses for the taxable years 1966 through 1968 were infact capital expenditures. 4. Whether petitioner established that it is entitled to theft loss deduction in the amount of $563 for the taxable year 1966.
5. Whether respondent erred in disallowing net operating loss deductions in the amounts of $3,501 and $3,260 for the taxable years 1967 and 1968.
6. Whether petitioner is liable for the addition to tax under section 6653(a) for the taxable years 1965 through 1968. 7. Whether the statute of limitations bars the assessment and collection of any deficiencies determined for the taxable years 1965 through 1967. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly.
P & R Enterprises, inc. (hereafter referred to as P & R or petitioner) is a corporation organized and existing under the laws of Ohio, having its principal place of *204 business in Canton, Ohio. P & R timely filed Federal income tax returns for each of the years in issue with the District Director of Internal Revenue at Cleveland, Ohio, on which it reported the following amounts of gross income: Income Items
1965
1966
1967
1968
Lounge receipts
$22,119.73
$27,317
$30,691
$52,643
Rental income
4,449
3,238
7,190
Cigarette commis-
sions, misc. income
600
108
28
Total
$22,119.73
$32,366
$34,037
$59,861
Respondent mailed a statutory notice of deficiency, covering the years 1965 through 1968, to P & R on March 14, 1972. P & R's stock is owned equally by Rocco Ferruccio (hereafter Rocco) and Patrick Ferruccio, Jr. (hereafter Pat, Jr.). During the years in issue, P & R operated a lounge and restaurant known as "The Place" in Canton, Ohio. The lounge was purchased in 1963 from Macri Corporation for $10,000. P & R paid $1,000 at the time of purchase and executed a note for the remaining $9,000. The note called for interest at the rate of six percent per annum, payable semiannually. Although terms of principal repayment were not specified in the note (other than a due date of March 1, 1968), the written *205 selling agreement called for monthly principal payments of $150. As of the date of trial, no payments of interest or principal had been made with respect to this loan. The debt was not listed as a liability on the income tax returns filed by P & R for the years 1965 through 1968, nor was the debt listed as an asset on the returns filed by Macri for those years. Even so, we find that there was no forgiveness of the debt in 1968, as has been determined by respondent.
In March 1966 the lounge was burglarized and $563 was taken from the cash register. P & R claimed a theft loss deduction of $563 on its 1966 return and respondent has denied the deduction. In 1965 P & R acquired an apartment building from North, Inc. (hereafter referred to as North), a corporation owned and controlled by Pat Ferruccio. The building was in poor condition and various repairs and improvements were made during the years 1966 through 1968. Also during this period various repairs and improvements were made to the lounge. For the most part, expenditures of this type relating to the apartment building were paid by check, whereas expenditures relating to the lounge were made in cash. Cash expenditures *206 were recorded on daily reports maintained for the lounge. Larry Miller (hereafter Miller), an accountant, maintained P & R's books and records and also prepared the income tax returns filed by P & R for the years 1965 through 1968. Miller periodically reviewed P & R's cancelled checks and the daily reports maintained for the lounge in order to record expenditures on P & R's books. From the information available on the check or check stub, Miller made a determination as to whether the expenditure constituted a currently deductible repair expense or a capital improvement. As to cash expenditures, Miller made this determination based on information contained in the daily reports. Miller never saw the underlying bills, invoices or receipts for these expenditures. For the years in issue, P & R deducted the following amounts as repair expenses: 1966
$2,779
1967
3,494
1968
3,053
Respondent disallowed the above deductions to the extent of $1,401, $3,233 and $3,053 on the ground that they were capital expenditures. Respondent reconstructed P & R's gross receipts using the source and application of funds method. The parties have agreed on all but one of the items *207 (and the correct amounts thereof) which appeared in respondent's reconstruction. The parties have stipulated that P & R had known available funds and made expenditures in at least the following amounts: 1965
1966
1967
1968
Total of available funds which
have beenstipulated
$25,762.73
$43,559.82
$38,029.87
$66,379.45
Total of expenditures which
have been stipulated
27,691.96
46,910.67
42,915.28
70,074.26
The item in dispute is an application of funds, described by respondent as unaccounted for cash distributions to Rocco. Respondent presumed that the income which was not reported on Rocco's returns for 1965 through 1968 originated from P & R and, therefore, respondent characterized those amounts as a disposition of funds by P & R. [28]
P & R reported a *208 net operating loss for 1966 which was carried over to 1967 and 1968. As a result of adjustments made in the notice of deficiency, respondent determined that there was no loss in 1966 and, therefore, denied the net operating loss deductions claimed for 1967 and 1968. OPINION Having determined that petitioner's books and records were inadequate, respondent reconstructed petitioner's gross receipts through the use of the source and application of funds method. Additionally, respondent has denied various deductions claimed by petitioner. Respondent acted within his authority in reconstructing petitioner's gross receipts. Respondent is not bound to accept a taxpayer's returns or books at face value. Holland v. United States,supra;John Harper,supra.Reconstruction is proper even when the taxpayer keeps books and records which support his return as filed. Campbell v. Guetersloh,supra;John Harper,supra.Petitioner did not provide this Court with books and records reflecting its gross receipts for the years in issue [29] and the testimony of petitioner's president and of its accountant, by *209 itself, does not demonstrate the adequacy of the books and records. David Courtney,supra.
The years 1965, 1966 and 1967, however, are not open to respondent unless the six-year statute of limitations set forth in section 6501(e)(1)(A) is applicable. Respondent has the burden of proving that P & R omitted from gross income [30] for each year an amount in excess of 25 percent of the amount of gross income stated in the return filed for each such year. C.A. Reis,supra. Respondent has not carried this burden. The disputed item in respondent's reconstruction of P & R's gross receipts is an application of funds, described by respondent as unaccounted for cash *210 advances to Rocco. Respondent did not introduce any evidence with regard to this item, but contends that Rocco's unreported income, as determined by the source and application of funds method, was derived from P & R. However, our determination that Rocco understated his income for these years was based entirely on Rocco's failure to carry the burden of proof. Respondent cannot rely on that failure in order to carry his own burden with respect to this corporation. Furthermore, respondent has not established that P & R was the source of any under-statement by Rocco. In sum, respondent has not established any unaccounted for cash advances to Rocco, and without such, respondent's reconstruction of P & R's gross receipts does not indicate a 25 percent omission of gross income for any of the years 1965, 1966 and 1967. The year 1968 remains open and, except with respect to the increased deficiency, petitioner has the burden of proof. The parties have agreed in all of the items in respondent's reconstruction of P & R's gross receipts except for the item described as "unaccounted for cash advances to Rocco." Respondent did not assert any such advances in the notice of deficiency for *211 1968 and he has failed to establish the advances asserted in his amended answer. Therefore, we find gross receipts equal to the excess of stipulated expenditures over stipulated known available funds for 1968. We have found that there was no forgiveness in 1968 of the $9,000 debt which P & R owed Macri. Rocco testified, and we believe credibly, that the debt had not been cancelled and that P & R was still obligated on the debt. We are unwilling to draw a contrary conclusion merely because the debt had not been repaid by 1968 and because the debt was not listed as a liability on income tax returns filed by P & R. [31]
Petitioner has not established that it was entitled to deduction for maintenance and repair expense beyond the amount allowed by respondent. Respondent's disallowance was based upon his conclusion that the amounts in question were capital expenditures. We cannot accept the contrary conclusion drawn by petitioner's accountant without knowing more about the specific expenditures involved. [32] It is *212 petitioner's responsibility to establish the specific nature of each expenditure for which it claims a deduction and petitioner has simply not done this. The final deduction disallowed by respondent for 1968 is the net operating loss carryover from 1966. Although 1966 is a closed year for the purpose of assessing a deficiency, we have jurisdiction to consider such facts with respect to petitioner's 1966 tax liability as may be necessary for a redetermination of its tax liability for 1968. Section 6214(b). Petitioner has not presented evidence sufficient to overcome respondent's determination of additional gross receipts for 1966, nor has petitioner established its entitlement to a deduction for repair expense in an amount greater than that allowed by respondent for 1966. Although petitioner has established that $563 was stolen from the lounge in 1966, it has not demonstrated that the amount stolen was included in its gross receipts. Nor would this amount be reflected in the reconstruction *213 of petitioner's gross receipts based upon the source and application of funds method. We would, therefore, sustain respondent's disallowance of a deduction under section 165. See Mary O'Hara Alsop,34 T.C. 606, 609-610 (1960), affd. 290 F. 2d 726 (2d Cir. 1961). [33] The result is that there was no loss in 1966 and consequently respondent's disallowance of the carryover to 1968 is sustained. Petitioner introduced no evidence to overcome respondent's determination that the addition to the tax under section 6653(a) is applicable for the year 1968 and we are compelled to find for respondent on this issue. Mark Bixby,supra.
Macri Corporation, Docket No. 862-72. Respondent determined deficiencies in petitioner's Federal income tax and additions thereto as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1965
$1,570
$393
$ 79
1966
2,084
521
104
1967
1,473
368
74
1968
1,725
345
86
Most of the issues having been settled, only the following three remain for *214 our determination: 1. Whether petitioner is entitled to net operating loss deductions for the years 1965 and 1966. 2. Whether petitioner is liable for the additions to tax under sections 6651(a) and 6653(a) for the taxable years 1965 through 1968. 3. Whether the statute of limitations bars the assessment and collection of any deficiencies determined for the taxable years 1965 through 1967. FINDINGS OF FACT Macri Corporation (hereafter referred to as Macri or petitioner) is a real estate holding company, organized and existing under the laws of Ohio and having its principal place of business in Canton, Ohio. During the years in issue, Macri's capital stock was owned by the following individuals in the following amounts: Pat Ferruccio
25 shares
Rocco Ferruccio (Pat's son)
10 shares
Patrick M. Ferruccio, Jr. (Pat's son)
10 shares
Macri filed its Federal income tax returns for the taxable years 1965, 1966 and 1967 on November 13, 1968, with the District Director of Internal Revenue for Cleveland, Ohio, at Akron, Ohio. Macri filed its Federal income tax return for the taxable year 1968 with the District Director of Internal Revenue, Cleveland, *215 Ohio, at Akron, Ohio, on July 25, 1969.A statutory notice of deficiency covering the years 1965 through 1968 was mailed to Macri on November 10, 1971. On the returns filed for 1965 and 1966, Macri claimed net operating loss deductions for losses allegedly incurred in the years 1962, 1963 and 1964. The returns filed for 1965 and 1966 were prepared by Larry Miller (hereafter Miller), the accountant who maintained Macri's books and records.Miller, however, did not maintain Macri's books during the years 1962 through 1964, nor did he prepare Macri's income tax returns for those years. In preparing the returns for 1965 and 1966 Miller simply claimed the operating losses which were reflected on the returns for the earlier years without independently checking Macri's books and records to verify those earlier returns. OPINION Respondent disallowed net operating loss deductions for 1965 and 1966 in respect of losses allegedly incurred in the years 1962 through 1964, on the ground that petitioner did not in fact sustain losses in the earlier years. Petitioner has not introduced any evidence establishing losses for the years 1962 through 1964. We cannot conclude that petitioner incurred *216 such losses merely from the fact that its income tax returns reflected losses. In light of petitioner's failure to carry the burden of proof, we sustain respondent's determination that these losses were not incurred. The statutory notice of deficiency was mailed within three years of the date on which each of the returns in issue was filed. Assessment and collection of the deficiencies are, therefore, not barred by the statute of limitations. Section 6501(a). Petitioner has not introduced evidence to establish that the additions to the tax under section 6651(a) and section 6653(a) are not applicable.Respondent's determination that the additions are applicable is, therefore, sustained. Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: P & R Enterprises, Inc., docket No. 4010-72; Samuel J. Ferruccio and Joan R. Ferruccio, docket No. 4012-72; Pat Ferruccio and Estate of Roxy Ferruccio, Deceased, Pat Ferruccio, Administrator, docket No. 4013-72; Rocco A. Ferruccio, docket No. 4014-72; Liberty Vending Company, Inc., docket No. 4039-72; and Pat Ferruccio, docket No. 4041-72.↩
2. On November 1, 1968, Samuel J. Ferruccio transferred his stock in Liberty Vending Company, Inc., to Rocco and Patrick M. Ferruccio, Jr.↩
3. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
4. Subsequent to the filing of the petition in docket No. 4013-72, Roxy Ferruccio died. The Estate of Roxy Ferruccio, Deceased, Pat Ferruccio, Administrator, has been substituted as a petitioner.↩
5. Respondent included within known available funds: reported income; cash on hand; and other nontaxable sources of funds.↩
6. After following this same procedure with respect to Samuel and Joan Ferruccio (docket No. 4012-72) and also with respect to Rocco Ferruccio (docket No. 4014-72), respondent's reconstruction of their incomes resulted in understatements equal in amounts to the above amounts determined for Pat and Roxy Ferruccio.↩
7. These totals are greater than the totals which appear in respondent's brief (p. 100) by the respective amounts of $85.50, $371, $137.50 and $155. These amounts correspond with payments which were listed in the notice of deficiency as having been made to Richard Bennett. Respondent included these payments in his request for findings of fact (p. 38 of respondent's brief) and there is no indication that he has conceded that they were not made. Consequently, we have assumed that these payments were inadvertently omitted by respondent when he computed the totals which appear on p. 100 of his brief.↩
8. The phrase "known available funds" will hereafter refer to the sum of cash on hand, reported income, and other nontaxable sources of funds. ↩
9. See Edward A. Troncelliti,T.C. Memo. 1971-72↩.
10. "Mr. Nickles" and "the fellow from Canton" may be one and the same; the record is not clear.↩
1. These amounts represent unreported income which was stipulated to and which is not reflected in the above reconstruction of income. [See stips 23 and 25.] ↩
2. In order to avoid duplication, the following items must be taken into consideration in making the Rule 155 computation.The cash dividends received from North were available for disposition and account for part of the excess of expenditures over known available funds. Additionally, the parties stipulated to the unreported amount of Pat's distributable share of partnership income for each year and they also stipulated to the amount of gain realized upon the sale of certain real property in 1968. The amounts of partnership income actually distributed to Pat and the amount realized upon the sale of the real property were funds available for disposition and account for part of the excess of expenditures over known available funds.↩
11. Respondent does not contend in the alternative that these distributions represented compensation.↩
12. Liberty's books and records were available to respondent.↩
13. Respondent included within known available funds: reported income, cash on hand, and other nontaxable sources of funds.
The stipulation of facts contains an item described as "Loan Proceeds - P. T. Bruel Inc. - Akron, Ohio" in the amount of $28,000 as a source of funds for 1966. Respondent's brief indicates that this item was inadvertently included in the stipulation as a source for 1966 and should rather be included as a source for 1967. Noting that the notice of deficiency lists this item as a source for 1967, that petitioners have not objected to respondent's request that we find the item as a source for 1967, and that it is to petitioners' advantage to do so, we have included this item in the above total for 1967 rather than for 1966.
[1]↩4 Employing the same procedure described in our findings in respect of Pat and Roxy Ferruccio (docket Nos. 4013-72 and 4041-72), respondent added to these amounts the amounts by which he had determined that Pat and Rocco had understated their incomes for each of the years in issue. Respondent has since abandoned this position and now asserts understatements only in the above amounts.
15. The phrase "known available funds" will hereafter refer to the sum of reported income, cash on hand and other nontaxable sources of funds.
This item was the subject of stipulation and has not been discussed herein. Petitioner's 1967 return included a net loss of $2,100 as his distributable share of partnership gain and loss from various partnerships. Respondent asserted that petitioner's distributable share of partnership gain and loss resulted in a net gain of $267.73 resulting in a total understatement of $2,367.73. The parties stipulated that petitioner's "net income from partnerships for 1967 is increased by $1,355.00." We assume that the parties have thereby agreed that rather than a $2,100 net loss in 1967, petitioner had a net loss of $745, resulting in an understatement of $1,355. The parties stipulated that petitioner's "net income from partnerships for 1968 is increased by $2,183.33." We assume that the parties have thereby agreed that petitioner's net income from partnerships was $2,358.38 rather than $175.30 as reported on petitioner's 1968 return. [1]6 See Edward A. Troncelliti,supra↩.
17. Liberty's books and records were available to respondent.↩
18. Respondent included within known available funds: reported income, cash on hand, and other nontaxable sources of funds. ↩
19. Employing the same procedure described in our findings in respect of Pat and Roxy Ferruccio (docket Nos. 4013-72 and 4041-72), respondent added to these amounts the amounts by which he had determined that Pat and Samuel Ferruccio had understated their incomes for each of the years in issue. Respondent has since abandoned this position and now asserts understatements only in the above amounts.↩
20. The phrase "known available funds" will hereafter refer to the sum of reported income, cash on hand, and other nontaxable sources of funds. ↩
21. See Edward A. Troncelliti,supra.↩
2. This item was the subject of stipulation and has not been previously discussed herein. ↩
3. To the extent partnership income was actually distributed to petitioner, it was available for disposition and accounts for part of the excess of expenditures over known available funds. Therefore, an adjustment may be necessary in the Rule 155 computation in order to avoid duplication.↩
22. Liberty's books and records were available to respondent.↩
23. Pursuant to an amendment to conform his answer to the proof, respondent increased the deficiencies and additions to the following amounts: ↩
Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1965
$23,754.74
$1,125.27
$ 1,125.27
1966
28,012.63
1,373.26
1967
32,040.52
1,602.03
1968
29,023.95
1,451.20
1. These items were included in cost of goods sold. The copy of the 1968 return which was submitted as a joint exhibit does not specify the amounts claimed for parts, records, cigarette purchases and truck rental. ↩
2. No such single category of deductions was specified in the returns filed for 1965, 1966, 1967 and 1968. Respondent has not further identified what specific items are included in "Other"; we, therefore, cannot determine the amounts claimed by petitioner in this category.↩
24. The notice of deficiency stated that the following unaccounted for cash advances were made: 1965
1966
1967
1968
Pat Ferruccio, Sr.
$7,043
$ 6,257
$ 7,457
$12,109
Rocco Ferruccio
5,028
10,123
12,692
--
Samuel Ferruccio
6,742
3,192
9,859
10,090
By way of an amended answer, respondent asserted that the unaccounted for cash advances to shareholders were as follows: 1965
1966
1967
1968
Pat Ferruccio, Sr.
$22,393.49
$19,841.98
$23,915.65
$27,109.51
Samuel Ferruccio
5,054.97
6,947.77
9,090.41
1,906.88
These are the amounts by which respondent asserts Pat Ferruccio, Sr., and Samuel Ferruccio understated their incomes, which amounts respondent presumed originated from Liberty. Respondent has conceded that Rocco Ferruccio did not receive any cash advances from Liberty during the years in issue.↩
25. The only documentary evidence submitted with respect to petitioner's books and records was two of the daily sales sheets for cigarette sales and two of the weekly checks written to cash to which were attached the supporting "receipts" for cash expenditures.↩
26. In the case of a trade or business "gross income" means gross receipts prior to the deduction for cost of goods sold. Section 6501(e)(1)(A)(i).↩
27. Pursuant to an amendment to conform his answer to the proof, respondent increased the deficiencies and additions to the following amounts: ↩
Addition to Tax
Year
Deficiency
Section 6653(a)
1967
$ 8,458.02
$422.90
1968
13,751.07
687.60
28. The notice of deficiency listed unaccounted for cash distributions to Rocco in the following amounts: 1965
$ 5,028
1966
10,123
1967
12,692
1968
0 After trial, respondent amended his answer with respect to the years 1967 and 1968 to assert unaccounted for cash distributions to Rocco in the following amounts: ↩
1967
$15,471.92
1968
11,865.28
29. The documentary evidence presented by petitioner consisted of: (1) ledger cards on which expenses were recorded; (2) six daily reports on which were recorded the daily gross receipts and expenses for the lounge; and (3) the summary of cash expenditures made from lounge receipts for the months of July 1967 and July 1968.↩
30. In the case of a trade or business "gross income" means gross receipts prior to the deduction for cost of goods sold. Section 6501(e)(1)(A)(i).↩
31. See Norman W. Meyers,T.C. Memo. 1968-289, affd. 435 F.2d 171 (3d Cir. 1970), cert. denied 401 U.S. 957↩ (1971).
32. The ledger cards simply list these expenditures as being for maintenance. This is an insufficient description for purposes of determining whether the expenditures were capital in nature.↩
33. See also Ralph Hill, et al.,↩ a Memorandum Opinion of this Court dated January 31, 1949.