STAUDENMAIER et al. v. JOHNSON et al.
No. 7325.

Circuit Court of Appeals, Seventh Circuit.
Feb. 6, 1941.

C. G. Mathys, of Madison, Wis., for appellants.

G. Arthur Johnson, of Ashland, Wis., for appellee.

Before EVANS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

TREANOR, Circuit Judge.

The plaintiff-appellee, receiver of the Northern National Bank, brought suit against the defendants to recover an assessment imposed upon the stockholders of the bank by the provisions of Sec. 64 of Title 12 U.S.C.A. The complaint alleged two causes of action. In the first Johnson individually was named defendant, and in the second the named defendants were Johnson and Barney Johnson & Company, a corporation. Judgment was entered for plaintiff in both causes and from this judgment the defendants have appealed.

Two. stock transactions are involved, the first relating to a purported sale of 31 shares of stock by Barney Johnson to one of his salesmen, and the second relating to a purported broker's sale of 50 shares by Barney Johnson & Co. to the same salesman. Barney Johnson owned all of the stock of Barney Johnson & Co., except qualifying shares, managed the company as his own enterprise, and carried out the two transactions.

The 31 shares were a part of a large block of stock which Johnson had bought in March of 1930. On June 22, 1931, there was a purported sale by Johnson of the 31 shares to his salesman, Lord. The 50 shares had been owned by a Mr. Aaron who offered the stock to Johnson for $650. About the middle of August, 1932, Johnson was informed by Aaron that if he didn't find a buyer for the stock Aaron was going to sell it at public auction. Johnson testified that he considered it a very serious matter for the stock to be put up at auction for the reason that under the conditions existing at the time such action might result in the closing of both national banks of Ashland, Wisconsin, a result which would seriously affect the interests of Johnson. Johnson testified that he talked to his salesman and asked him if he wanted to own another 50 shares of stock in the Northern National Bank, and that he told his salesman that he, Johnson, would not "buy the bank stock." The deal was closed with Aaron, and Barney Johnson & Co. receipted for the stock. The transfer of the stock to Lord, the salesman of Johnson and Barney Johnson & Co., was entered on the books of the bank as of November 21, 1932.

In respect to the first cause of action the defense was that the defendant, Johnson, had transferred the 31 shares of stock about a year and a half prior to the closing of the bank. In respect to the second cause of action the defense was that the 50 shares of stock never had been owned

by the defendant, Barney Johnson & Co. The case of the plaintiff depended entirely upon a showing that the purported purchases by salesman Lord were merely colorable transactions carried out for the benefit of defendants Johnson and Barney Johnson & Co., and that, as between Lord, the purported purchaser, and Johnson and Barney Johnson & Co., the actual ownership never vested in Lord.

In both causes of action the District Court concluded that the transfers of stock to Lord were merely colorable and fraudulent, made for the purpose of avoiding liability of stock assessment upon Barney Johnson and Barney Johnson & Company, and that Johnson and Barney Johnson & Company remained the actual owners of the stock at the time the bank was closed and the assets taken over by the Comptroller of Currency of the Federal Government. The sole question on appeal is whether or not there was substantial evidence to support the foregoing conclusions.

Defendants urge that the District Court disregarded the undisputed and unimpeached testimony of witnesses and refer especially to testimony of defendant Johnson. It is obvious that the trial court did not accept at its face value all the statements made by defendant Johnson; but there is no rule of law which requires a trial court to accept at its face value testimony of witnesses even though such testimony is neither formally contradicted nor impeached. The question of credibility of testimony is always present. In the instant case it is clear that the circumstances of the two stock transactions do not strengthen the credibility of the testimony of either the defendant or the alleged purchaser. Johnson, or Barney Johnson & Company, retained possession of all the stock certificates involved in the two transactions. The purported purchaser was insolvent and testified that he had no assets from which to pay assessments on the stock. Both Johnson and Lord testified that Lord paid $1 per share in cash for the 31 shares. The record of the second transaction in the office of Johnson & Company fixes the price per share for the 50 shares at $1. Johnson testified that Lord paid $50 cash in the second transaction and was debited with $600. But in answer to the question "did you pay for that stock?" Lord testified that under the arrangement his "account was debited for the cost of the stock."

And in answer to the question "did you ever pay it" he testified that he did not believe "it has ever been paid;" that he thought he still had "the debit." Lord's testimony respecting the details of the two transactions was so uncertain and vague as to justify the inference that he took no active part in the transactions and that the transactions were arranged and carried out by Johnson for the benefit of Johnson or Barney Johnson & Co. and to avoid the payment of a stock assessment in case the bank should be forced to close its doors because of insolvency. In short, considering the evidence as a whole in the light of the circumstances, we conclude that it was not unreasonable for the District Court to infer that Lord had no ownership interest in the stock; that no actual payments were made by Lord; that Lord was being used by Johnson and Barney Johnson & Co. as the holder of the bare legal title to the stock to conceal their own actual and beneficial ownership.

The judgment of the District Court is affirmed.