## HUMPHREYS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7700.

Circuit Court of Appeals, Seventh Circuit.

Jan. 28, 1942.

Rehearing Denied Feb. 18, 1942.

Edward J. Hess and Charles P. R. Macaulay, both of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Michael H. Cardozo, J. P. Wenchel, J. Louis Monarch, Carlton Fox, and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Petitioner asks us to review an order of the Board of Tax Appeals sustaining a deficiency determination for the years 1930, 1931, and 1932, 25% penalty for 1930 and 50% fraud penalty for all three years, on the ground that petitioner had not included $10,000 protection payments received from dry cleaners in 1930, $5,000 received as a proprietary interest in the Drexel Cleaners in 1931, bank deposits in the name of M. L. Brunswick totaling $29,332.82 for 1931 and $50,114.29 for 1932, and $50,000 received as ransom money in 1931.

Concerning the $50,000 ransom payment in 1931, the facts adduced showed that Robert C. Fitchie, a man 74 years of age who had been president of the Milk Wagon Drivers Union for 32 years, was kidnapped on December 21, 1931; that

Steve C. Sumner, pursuant to directions given to him by the kidnappers, placed $50,000 in currency—which had been delivered to him by Brink's Express Company—on the seat of his automobile and drove to a designated street; there he alighted and while standing at a point 25 feet from his automobile, he saw the petitioner take the money and drive away. The receipt of the $50,000 constitutes taxable income. National City Bank v. Helvering, 2 Cir., 98 F.2d 93. Petitioner denied that he had any connection with the kidnapping or that he had collected the ransom.

The further controlling facts adduced at the hearing before the Board showed that during the tax years in question the petitioner was not engaged in any legitimate business. He was regarded as a gangster and racketeer. During 1929 various dry cleaning and dyeing establishments in Chicago were having trouble with a so-called labor organization and a meeting was held to discuss the matter. At the meeting one Ginsberg stated "he had a certain party that had influence with the unions" and if agreeable to those present, he would consult that party about providing protection. A week later another meeting was held and Ginsberg reported that he had made arrangements with the petitioner providing protection from further molestation for $10,000 to be paid by the establishments in weekly instalments. In 1930 that sum was paid to the petitioner. He admits receipt thereof, and claims it was included in his return.

Toward the end of 1930 petitioner discontinued the arrangement providing protection for the establishments. At that time one Ed. Oslan, operating the Drexel Cleaners, was fearful that if the petitioner "stepped out of the deal * * * they would pick on him and tie him [Drexel Cleaners] up." He advised Ginsberg of his fears. Ginsberg brought Oslan to the petitioner. A conversation ensued among the three in which Ginsberg said: "Why don't you take Humphreys in with you and then you won't have any trouble; then you will get along with them all right." Thereafter in July 1931 petitioner became a part owner of the Drexel Cleaners to the extent of $5,000. Petitioner testified the $5,000 interest in the Drexel Cleaners was given to him as a gift.

On November 2, 1931, an account was opened at the Sears Community Bank un-

der the name of M. L. Brunswick. It was closed on December 28, 1932. The total deposits made in the account were $29,812.82 during 1931 and $52,776.81 in 1932. One Bolker, cashier of the bank, attended to the opening of the account. When called as a witness for the petitioner he testified that the petitioner was not the person who opened the account. On cross examination, however, he admitted that in June 1933, in the presence of the District Attorney and several other persons, he had stated that the account belonged to the petitioner.

The petitioner denied that he was the person who had opened the account or that he had any interest in the account, and submitted the testimony of witnesses to show that one M. L. Leventhal was the owner of the account. Leventhal did not testify. The record, however, discloses that petitioner had carried bank accounts under assumed names, e. g., an account in the Cragin State Bank in the name of M. L. Hurley. A comparison of the signatures of M. L. Hurley and M. L. Brunswick indicates a similarity of the handwriting between them and the admitted signature of the petitioner. It also appeared that two checks drawn on the Brunswick account were used in partial payment of an automobile belonging to petitioner's wife; that a check issued by the Drexel Cleaners, payable to the petitioner, was deposited in the Brunswick account and that several checks payable to petitioner had been deposited to the account of Ed Simson in the Sears Community Bank, which account had been opened with funds taken from the Brunswick account at the time the Brunswick account was closed.

In June, 1933, petitioner was indicted for unlawfully and feloniously attempting to evade income tax for the years in question. The indictment was returned in the name of the United States of America against M. L. Humphreys, alias Murray L. Humphries, alias John Humphrey, alias Murry L. Hurley, alias M. L. Hurley, alias M. L. Brunswick, alias John Hall, alias Joseph Burns, alias John Burns, charging the petitioner with income for 1930 in the amount of $20,360, for 1931 in the amount of $88,712.82, and for 1932 in the amount of $60,489.50. Petitioner fled and remained a fugitive from justice for more than a year. On October 26, 1934, after he had returned from Mexico, he entered an un-conditional plea of guilty to the indictment and was sentenced to imprisonment.

Prior to 1932, petitioner had never made or filed an income tax return. In the summer of 1931 he employed an accounting firm to prepare returns for the current year and several preceding years. The work of preparing the returns was done by J. A. Janzen. Petitioner's return for 1931 was filed on March 15, 1932, while the returns for 1928, 1929, and 1930 were filed on April 5, 1932. On the returns for 1928 and 1929, his occupation or business was described as "Restaurant." The figures shown on the returns for those years were obtained almost entirely from cancelled checks and the records of bank accounts. For the years 1930 and 1931, petitioner furnished Janzen with no records whatever, advising him that he maintained no bank account and had no record of the income which had been received by him during those years and, except for the amounts received from the General Market House, could not recall the source of other income. On the return for 1930 he described his occupation as that of "Inspector" and on the 1931 return as "Superintendent." For 1930 and 1931 the income shown, other than that from the General Market House, was described as "Miscellaneous" and "Income from business or profession" and amounted to $8,860 and $25,380 respectively. Petitioner's return for 1932 was prepared by one Scallet and in the return petitioner's occupation was shown as "Executive" and the income was $20,800. In making the return petitioner advised Scallet that his total income for the year was $20,800.

The Board in its opinion stated that the issues of fact and the conclusions reached were drawn from the testimony of the witnesses and supporting documentary evidence, and that the testimony of some of the witnesses was conflicting and could not be reconciled. Other witnesses were greatly agitated and the conclusion was inescapable that they were not telling the whole truth, if in fact they were telling the truth at all.

Petitioner contends that testimony tending to show that he was generally regarded as a gangster and racketeer and that he had not been engaged in any legitimate business was incompetent and prejudicial. A like contention was made and rejected by this court in Capone v. United States, 7 Cir., 51 F.2d 609.

Petitioner next contends that the plea of guilty to the indictment for evasion of income tax was not an admission of the amounts of the deficiency, nor that petitioner and M. L. Brunswick are one and the same person, because he testified that prior to making his plea of guilty he had not read the indictment, nor had it been read to him. It will be enough to say that the Board was not bound to believe his testimony. Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 851, 35 L.Ed. 501 and Staudenmaier v. Johnson, 7 Cir., 117 F.2d 397.

Petitioner also insists that respondent's evidence was not worthy of belief. In considering and disposing of the point we are obliged to say, as we have so frequently said, that we are not the triers of fact, but merely reviewers of the action of the Board and in our investigation we are limited to an ascertainment of the existence of substantial evidence sufficient to support the findings and where there is any competent evidence to sustain the Board's findings, we may not substitute our judgment as to the facts. We have, however, considered the evidence and experience no difficulty in determining that there was substantial evidence to sustain the Board's findings.

Petitioner makes the point that it was an abuse of discretion to refuse to hear additional testimony. The record discloses that after the Board had filed its findings of fact, petitioner filed his motion for leave to introduce the testimony of M. L. Leventhal, supported by petitioner's affidavit to the effect that Leventhal was in Florida at the time of the hearing, but had returned and was willing to testify that he, Leventhal, had opened the account at the Sears Community Bank and operated under the name of M. L. Brunswick, and that petitioner had no interest therein. Under the state of this record we cannot say that the Board abused the discretion vested in it by law.

The final point raised concerns the disallowance of $2,526 as a business expense, made up as follows: $500 for gasoline and oil; $451 for garage and service; and $1,575 on account of depreciation on an automobile. Expenses of this nature are deductible only if they are incurred "in carrying on any trade or business" § 23(a), Revenue Acts of 1928 and 1932, 26 U.S.C.A. Int.Rev.Code § 23(a) (1). The Board sustained the action of the respondent in disallowing these deductions on the ground that the petitioner was not engaged in any business within the meaning of the statute. We agree and in view of what we have already said in this opinion relative to petitioner's activities, it will not be necessary to discuss the matter further.

The decision of the Board of Tax Appeals is affirmed.