DARWIN A. SALLS AND MADELYNE A. SALLS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Salls v. Commissioner
Docket No. 29050-89
United States Tax Court
T.C. Memo 1992-547; 1992 Tax Ct. Memo LEXIS 572; 64 T.C.M. (CCH) 754; T.C.M. (RIA) 92547; September 16, 1992, Filed *572 Decision will be entered for respondent. For Darwin A. Salls, pro se. For Respondent: James F. Kearney. HAMBLEN
HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Chief Judge: By notice of deficiency, respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: 1984
1985
Tax
$ 15,590.00
$25,437.00
Sec. 6651(a)(1)
---   1,259.00
Sec. 6653(a)(1)
780.00
1,284.00
Sec. 6653(a)(2)
[1]   [1]   Sec. 6653(a)(1)(A)
---   ---   Sec. 6653(a)(1)(B)
---   ---   Sec. 6661
3,898.00
6,359.00
Additions to Tax
1986
1987
1988
Tax
$ 68,541.00
$ 6,579.00
$ 20,123.00
Sec. 6651(a)(1)
---   ---   ---   Sec. 6653(a)(1)
---   ---   1,006.00
Sec. 6653(a)(2)
---   ---   ---   Sec. 6653(a)(1)(A)
9,459.92
515.93
---   Sec. 6653(a)(1)(B)
[1]   [1]   ---   Sec. 6661
17,135.00
1,645.00
5,031.00
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect *573 for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. In her amended answer, respondent subsequently determined deficiencies and additions to tax as follows: 1984
1985
Tax
$ 23,746.00
$ 20,953.00
Sec. 6651(a)(1)
---   1,023.00
Sec. 6653(a)(1)
1,187.00
1,060.00
Sec. 6653(a)(2)
[1]  [2]   Sec. 6653(a)(1)(A)
---   ---   Sec. 6653(a)(1)(B)
---   ---   Sec. 6661
5,937.00
5,238.00
Additions to Tax
1986
1987
1988
Tax
$ 32,249.00
$ 16,168.00
$ 16,674.00
Sec. 6651(a)(1)
---   ---   ---   Sec. 6653(a)(1)
---   ---   834.00
Sec. 6653(a)(2)
---   ---   ---   Sec. 6653(a)(1)(A)
1,588.00
808.00
---   Sec. 6653(a)(1)(B)
[3]   [4]   ---   Sec. 6661
7,941.00
4,042.00
4,169.00
The deficiencies and additions to tax set forth in the notice of deficiency are based *574 upon respondent's determination, using the source and application of funds method of reconstructing income, that petitioners had unreported income as follows: 1984
$ 46,647.00 1985
83,214.58
1986
174,589.37
1987
42,170.94
1988
94,546.00
By means of a stipulation of settled issues, petitioner Madelyne Salls, was agreed to be an innocent spouse pursuant to section 6013(e). As a result, all references to petitioner in this opinion will be to Darwin Salls. The issues to be decided are: (1) Whether the statute of limitations on assessment and collection under section 6501(a) expired for the taxable years 1984 and 1985 prior to the issuance of the notice of deficiency; (2) whether petitioner had unreported income in the amounts determined by respondent; (3) whether petitioner is liable for the additions to tax pursuant to sections 6653, 6651, and 6661; and (4) whether petitioner's constitutional rights were violated because respondent's agent interviewed petitioner while he was incarcerated and failed to provide petitioner with any Miranda warnings. FINDINGS OF FACT Some of the facts have been deemed stipulated pursuant to Rule 91(f) and additional facts and exhibits *575 were stipulated to at trial. The stipulation of settled issue, stipulation of facts, first supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. Petitioners resided in Palm Harbor, Florida, when they filed their petition in this case. The tax returns for the years at issue were filed with the Office of Internal Revenue Service in Atlanta, Georgia. Petitioners filed their income tax returns for 1984-1985 as follows: 1984
April 15, 1985
1985
August 20, 1986
Respondent mailed the notice of deficiency to petitioners on September 6, 1989. The notice of deficiency was mailed within 6 years of the date of filing of petitioners' 1984 and 1985 returns. Petitioner was indicted on five counts of conspiracy to possess with intent to distribute marijuana and cocaine and was convicted on three of the five counts. At the time of the trial in this case, petitioner was incarcerated in the Federal prison in Bastrop, Texas. During August 1989, while petitioner was incarcerated in the Levy County Jail in Bronson, Florida, respondent's agent, Joe Elliott (Mr. Elliott), interviewed petitioner with respect to the civil income tax examination. *576 The information attained at the meeting was used as a basis for a jeopardy assessment. Mr. Elliott did not give petitioner any Miranda warnings prior to interviewing him. Mr. Elliott was never involved with the criminal investigation of petitioner. In respondent's amended answer, respondent claimed increased deficiencies and additions to tax for the taxable years 1984 and 1987. The increased deficiencies relate principally to a $ 25,000 loan from petitioner's father in 1984 and approximately $ 32,000 of proceeds from the sale of Lot 7, Southern Oaks, Levy County, Florida (Southern Oaks Lot 7) and Southern Oaks Property, Levy County, Florida (Southern Oaks Property) in 1987. With respect to the $ 25,000 loan in 1984, petitioner produced nine checks totaling $ 20,000 which he claims were gifts or loans from his parents during 1984. Two checks totaling $ 600 were marked birthday and merry Christmas and were drawn on petitioner's parents' personal-checking account in Ocala, Florida. All but one of the checks were made payable to petitioner or his wife, while one check for $ 10,000 was payable to W.A. Salls. In addition, petitioner claims numerous other gifts or loans from *577 his parents during the taxable years in question. He introduced a number of canceled checks to substantiate his claims. Petitioner claims he received four checks totaling $ 27,119.06 during 1985 as gifts/loans from his parents. Two of the checks, each for $ 100, were marked happy birthday. The third check, drawn on petitioner's father's account, for $ 8,000 was marked but the memo was not legible. The fourth check was made out to Suwannee County for $ 18,919.06. The memo on the check reads downpayment on land. Petitioner claimed he received three checks totaling $ 18,200 as gifts/loans from his parents during 1986. Two checks totaling $ 200 were marked happy birthday, while the remaining check for $ 18,000 was marked loan. Petitioner claims he received two checks totaling $ 8,782.34 as gifts/loans from his parents during 1987. The check in the amount of $ 782.34 was not made payable to petitioner. Finally, petitioner claims he received seven checks totaling $ 57,772.26 as gifts/loans from his parents during 1988. At least half of the checks were not legible or were clearly not payable to petitioner. A. 1984
1. Applications of Funds
On November 13, 1984, *578 petitioner purchased Southern Oaks Lot 7. The property was purchased entirely with cash, $ 1,000 cash downpayment plus $ 12,418.60 cash at closing. The difference between the purchase price and the amount paid at closing is due to the effect of buyer and seller credits. The $ 13,418.60 was an expenditure in 1984. On September 26, 1984, petitioner purchased property referred to as Southern Oaks Property. The property was purchased for $ 5,000 cash downpayment plus $ 19,218.29 from the proceeds of a note and mortgage from Levy County National Bank. The mortgage and the note were fully paid and satisfied in 1984. The $ 5,000 cash downpayment was an expenditure in 1984. The promissory note was marked "Paid in Full 10-18-84 signed J.A. King." Jim King Realty, Inc., was the real estate agency involved in this property transaction. On May 29, 1984, petitioner purchased a 1984 Dodge Ram Charger truck for $ 21,143.51. The purchase price was paid as follows: $ 4,883.75 cash downpayment and the balance paid by trade-in and financing. The $ 4,883.75 cash downpayment was an expenditure in 1984. Other expenditures made by petitioner during 1984 include: $ 200 moving expense claimed on *579 petitioner's income tax return; $ 20,000 loan from petitioner to Southern Pride Meats; and $ 15,000 personal living expenses. 2. Source of Funds
Petitioner reported income of $ 11,138 as "various contract services - meat cutter" on his 1984 tax return which was a source of funds in 1984. In addition, petitioner received $ 25,000 as a loan from his father which was also a source of funds for 1984. B. 1985
1. Applications of Funds
On February 19, 1985, petitioner purchased property referred to as Unit 205 Island Place, at Cedar Key, Levy County, Florida (Island Place). The purchase price was $ 89,900, payable as follows: $ 28,154.95 second mortgage to the seller; assumption of a first mortgage of $ 56,745.05; and a cash deposit of $ 5,000. Miscellaneous fees were paid at closing in the amount of $ 359.39. By October 28, 1985, the second mortgage was fully paid and released. In addition, petitioner made principal payments in the amount of $ 272.77 on the first mortgage during 1985. The $ 5,000 cash deposit, $ 359.39 miscellaneous fees, $ 28,154.95 payment of the second mortgage, and $ 272.77 of principal payments on the first mortgage were expenditures in *580 1985. During 1985 petitioner purchased four cars which he paid for as follows: Cash
Model
Price
Downpayment
Trade-in
Financed
1984 Lincoln Continental
$ 25,754.00
$ 12,000.00
$ 1,473.14
$ 12,299.31
1985 Chevrolet C-20
16,052.38
579.67
2,692.71
14,135.65
1985 Jeep Wagoneer
18,112.40
3,000.00
1,984.50
14,717.82
1985 Chevrolet C-10
8,714.50
2,979.85
-   7,001.60
The cash downpayments, in the amount $ 18,559.52, were expenditures during 1985. Other expenditures made by petitioner during 1985 include: $ 21,462 contribution to Salls Properties, Inc. (Salls Properties), a wholly owned corporation of petitioner; $ 1,878 Federal income tax payments; $ 20,776 claimed Schedule C expenses; [1] $ 10,601 claimed Schedule E expenses; $ 10,000 purchase of a certificate of deposit; and $ 17,400 personal living expenses. *581 2. Sources of Funds
Petitioner reported income of $ 36,772 from interest, Schedule C gross receipts, and Schedule E rental income on his 1985 tax return which was a source of funds in 1985. In addition, petitioner received $ 25,000 as a repayment of petitioner's investment in Southern Pride Meats in 1985 which was a source of funds. C. 1986
1. Application of Funds
On July 1, 1986, Salls Properties purchased property referred to as Treasure Camp Addition No. 1 (Treasure Camp) from Dr. Carl W. Irwin (Dr. Irwin). The parties agreed that the purchase price in part was paid by the assumption of the first mortgage on the property in the amount of $ 89,760.40. Although the deed was drafted in the name of Salls Properties, the property never appeared on its books, no payments were made by Salls Properties, and petitioner admitted he never transferred the property to Salls Properties. The $ 6,838 in principal payments made on the assumed mortgage constitutes an expenditure made by petitioner in 1986. On December 12, 1986, petitioner purchased property referred to as Lot 105 Hamlet at Bently Park (Hamlet). The purchase price was $ 101,721.17, which petitioner paid *582 $ 19,321.47 in cash and $ 82,400 from the proceeds of a note and mortgage. The $ 19,321.47 cash to purchase the property was an expenditure in 1986. On May 14, 1986, petitioner purchased a 1986 Caravelle for $ 6,000 cash downpayment, trade-in of $ 2,403.92, and financed the amount of $ 9,036.99. The cash downpayment of $ 6,000 was an expenditure in 1986. Other expenditures made by petitioner during 1986 include: $ 16,000 contribution to Salls Properties; $ 5,000 contribution to Geiger & Associates; $ 5,732.66 principal payments on the first mortgage on Island Place; $ 500 Federal income tax payments; $ 18,057 claimed Schedule A expenditures; $ 21,939 claimed Schedule C expenditures; $ 10,923 claimed Schedule E expenditures; $ 1,049 purchase of depreciable items; $ 5,000 purchase of a bass boat; and $ 18,500 personal living expenses. 2. Sources of Funds
Petitioner reported income of $ 62,975 from Schedule C gross receipts and Schedule E rental income on his 1986 tax return which was a source of funds in 1986. In addition, during 1986, petitioner cashed in the $ 10,000 certificate of deposit purchased by petitioner in 1985 with the proceeds being paid $ 6,000 in cash and *583 $ 4,158.37 check deposited to an account in the Levy County State Bank. This was a source of funds in 1986. D. 1987
1. Application of Funds
On March 30, 1987, petitioner acquired property referred to as Unit 206, Paradise Point Villas (Paradise Point), for $ 80,000. The purchase price was paid by the assumption of a $ 53,844.67 mortgage and the exchange of the Southern Oaks Property which the parties valued at $ 26,000. Petitioner also paid $ 541.50 as buyer's expenses to close, which was an expenditure in 1987. During July 1987, petitioner purchased a 25-foot Pro-Line boat for $ 38,351. Of this amount, $ 18,267 was financed and $ 20,084 was paid in cash. The cash payment as well as $ 1,336 of principal payments with respect to the loan on the boat were expenditures in 1987. In addition, during 1987, petitioner purchased a 1987 Dodge Raider for $ 500 cash downpayment, $ 1,206.43 trade-in, and $ 11,664.12 financed. The cash downpayment was an expenditure in 1987. Petitioner made the following principal payments with respect to property purchased in prior years which were expenditures during 1987: $ 4,510.50 with respect to Treasure Camp; $ 14,274 with respect *584 to Hamlet; and $ 6,376.62 with respect to Island Place. Other expenditures made by petitioner during 1987 include: $ 33,095 purchase of airplane; $ 7,019 Federal income tax payments; $ 11,835 claimed Schedule A expenditures; $ 24,368 claimed Schedule C expenditures; $ 18,138 claimed Schedule E expenditures; $ 18,103 contribution to Salls Properties; and $ 15,000 personal living expenses. 2. Source of Funds
Petitioner reported income of $ 100,867 from interest income, Schedule C gross receipts, Schedule E rental income, and proceeds from the sale of an airplane on his 1987 tax return which was a source of funds in 1987. In addition, petitioner received $ 26,000 and $ 6,000, respectively, from the sales of Southern Oaks Property and Southern Oaks Lot 7 as reflected in the notice of deficiency. E. 1988
1. Application of Funds
On January 26, 1988, petitioner purchased property referred to as Suwannee River Heights (Suwannee) for $ 51,000 of which $ 10,556 was paid in cash and the balance of $ 41,000 financed with a first mortgage. The amount paid in cash as well as the $ 815 of principal payments with respect to the mortgage were expenditures in 1988. Petitioner *585 purchased a 1988 Chevrolet pickup on February 1, 1988, paying $ 8,000 as downpayment and financing the balance of $ 11,565.75. The cash downpayment as well as the $ 1,739.52 of principal payments with respect to the loan were expenditures in 1988. In addition, petitioner purchased at least three other cars during 1988. On January 11, 1988, petitioner purchased two checks, both in the amount of $ 7,500, which were used to purchase a Delorean automobile. The $ 15,012, which includes bank charges, was an expenditure in 1988. Petitioner purchased a 1985 Nissan Wagon on December 5, 1988, paying $ 3,346 in cash and financing the balance. Petitioner purchased a 1981 Oldsmobile Omega for $ 2,761 cash. The cash payments were expenditures in 1988. Petitioner made the following principal payments with respect to property purchased in prior years which were expenditures during 1988: $ 2,873 with respect to Hamlet; $ 590.47 with respect to Island Place; and $ 3,395 with respect to the Pro-Line boat. Other expenditures made by petitioner during 1988 include: $ 20,000 loan to Warren Joseph Bronson; $ 6,317 Federal income tax payments; $ 12,572 claimed Schedule A expenditures; $ 34,793 claimed *586 Schedule C expenditures; $ 22,088 claimed Schedule E expenditures; $ 275 self-employment medical insurance; $ 3,974 contribution to Salls Properties; and $ 18,500 personal living expenses. 2. Sources of Funds
Petitioner reported income of $ 80,684 from interest income, Schedule C gross receipts, and Schedule E rental income on his 1988 tax return which was a source of funds in 1988. In addition, petitioner received a Federal income tax refund in 1988 of $ 929 which was also a source of funds. OPINION A. Statute of Limitations
Section 6501(a), as a general rule, bars the assessment and collection of a deficiency in tax unless it is assessed within 3 years after the return was filed. Petitioner's returns for 1984 and 1985 were filed on April 15, 1985, and August 20, 1986, respectively. The notice of deficiency was mailed to petitioner on September 6, 1989. Since the notice of deficiency was mailed to petitioner more than 3 years after the returns were filed, the assessment and collection of the deficiencies is barred unless one of the exceptions to the general rule is applicable. Respondent relies upon the exception set forth in section 6501(e), which extends the *587 limitation period to 6 years with respect to taxable years in which gross income stated in the return has been understated by more than 25 percent. Respondent bears the burden of proof on this issue. Stratton v. Commissioner, 54 T.C. 255, 289 (1970), modified 54 T.C. 1351 (1970). Respondent cannot simply rely on her determination of a taxpayer's income and the taxpayer's failure to meet his burden of proof, but instead must establish that the taxpayer failed to report gross income in excess of 25 percent of the gross income reported on his return. The 25-percent omission must result from omitted income rather than from excessive deductions. Id. at 289. Twenty-five percent of the amount of gross income stated in petitioner's returns for 1984 and 1985 was $ 2,785 and $ 9,193, respectively. Based on the stipulations of the parties and the evidence presented at trial, it is clear that petitioner underreported his gross income. [2] These understatements are in excess of 25 percent of the gross income stated on petitioner's tax returns for 1984 and 1985. *588 Petitioner, relying on section 6501(e)(1)(A)(ii), contends that the assessment may be avoided by his disclosure of gifts and loans. Beyond our determination that petitioner has misconstrued the applicability of section 6501(e)(1)(A)(ii), petitioner did not substantiate enough dollars of the alleged gifts and loans to reduce the difference below 25 percent. Accordingly, respondent is not barred by the statute of limitations from assessing and collecting tax due from petitioner with respect to the taxable years 1984 and 1985. B. Reconstruction of Income
A taxpayer is required to keep sufficient records to enable respondent to determine his correct tax liability. Sec. 6001. In the absence of such records, respondent may compute the taxpayer's income by any method that clearly reflects income. Sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 687, 693 (1989); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965); Sutherland v. Commissioner, 32 T.C. 862 (1959). The method of reconstructing income may be indirect and need only be reasonable in light of all surrounding circumstances. *589 Holland v. United States, 348 U.S. 121 (1954); Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). Respondent reconstructed petitioner's income for the years at issue using the source and application of funds method. This method has long been regarded as a reasonable method of determining income. See United States v. Johnson, 319 U.S. 503, 517-518 (1943); Meier v. Commissioner, 91 T.C. 273, 295-296 (1988). The source and application of funds method is based on the assumption that the amount by which the taxpayer's applications of funds exceed his known sources of funds is taxable income, unless the taxpayer can show his expenditures were made from some nontaxable source of funds. See Taglianetti v. United States, 398 F.2d 558, 562 (1st Cir. 1968), affd. 394 U.S. 316 (1969). A deficiency determined by the use of the source and application of funds method is presumptively correct, and the burden of proof is on the taxpayer *590 to demonstrate otherwise. Rule 142(a). To meet this burden, a taxpayer must prove either that someone else made the expenditures or that the funds used were obtained from nontaxable sources, e.g., loans, gifts, inheritances, or assets on hand at the beginning of the taxable period. See DeVenney v. Commissioner, 85 T.C. 927, 930-931 (1985). Generally, respondent's determinations in a notice of deficiency are presumed correct. However, respondent must sustain the burden of proof on all new matters pleaded. Rule 142(a). Asserting an increased deficiency during the course of litigation is a new matter. Achiro v. Commissioner, 77 T.C. 881, 890 (1981). Respondent, by means of an amendment to answer, asserted an increased deficiency for 1984 and 1987. Thus, respondent bears the burden of proving the increased amount of the deficiencies for these years. Petitioner contends that we should reject respondent's recomputation because respondent failed to demonstrate with reasonable certainty petitioner's opening net worth. However, respondent may employ the source and application of funds method on the assumption that the *591 taxpayer's net worth and/or cash on hand will remain constant throughout the taxable period. The taxpayer has the burden to show that respondent's assumption is incorrect. [3] Petitioner failed to present any evidence on this issue, and therefore, the argument is without merit. Petitioner further contends that respondent's source and application of funds analysis is flawed in two respects: (1) It did not take into account gifts from petitioner's father; and (2) it did not take into account funds from the Drug Enforcement Administration (DEA). In addition, petitioner contests various expenditures and sources of funds which respondent asserted. These matters are discussed below. However, as a general matter, most of the evidence introduced with respect to these matters was in the *592 form of testimony by petitioner which we found to be vague, indefinite, and self-serving, as we have placed little value on the testimony. See Humphreys v. Commissioner, 42 B.T.A. 857 (1940), affd. 125 F.2d 340 (7th Cir. 1942). Gifts from Parents
The parties stipulated to a series of checks that petitioner argues represent gifts from his father. Since the increased deficiency for 1984 related to the disallowance of the claimed gifts, respondent bears the burden of demonstrating that the checks do not represent a nontaxable source of funds. For the other years at issue, 1985 through 1988, petitioner bears the burden of proof with respect to the alleged gifts. Both parties failed to produce petitioner's father as a witness at trial. As we have to look to is petitioner's self-serving testimony that the series of checks from his father were loans or gifts. Respondent merely relied on petitioner's bearing the burden of proof and did not introduce any evidence on this issue. As such, respondent did not meet her burden of proof for the taxable year 1984 and is not entitled to the increased deficiency for 1984 related *593 to gifts from petitioner's father. Consequently, petitioner prevails on this issue for 1984. However, petitioner failed to demonstrate that any of the checks received in later years qualified as gifts or loans, and, therefore, the amounts do not constitute a nontaxable source of funds for 1985 through 1988. Therefore, respondent is sustained as to these years. Drug Enforcement Administration Funds
Petitioner contends that he received funds from the DEA that were used to purchase assets for DEA purposes. Petitioner contends that the DEA would give him a downpayment and let him finance the balance for the purchases of numerous cars and boats. Once again, the only proof of petitioner's contentions is his own self-serving, uncorroborated testimony, which was not even remotely logical. The parties conceded that petitioner worked for the DEA as an informant and received reward money, expense money, and informant money. However, it is unlikely that an effective drug operation could be staged if left to the vagary of petitioner's ability to obtain financing for a part of his cover. Petitioner has failed to demonstrate that DEA was the source of the funds used to purchase numerous *594 cars and boats during the years at issue. Moreover, the only expenditures included in respondent's source and application of funds analysis were those expenditures for assets reduced to petitioner's personal benefit and control. The analysis did not include the assets allegedly used for DEA purposes. In addition, petitioner's contention that the funds used to purchase the 25-foot boat in 1987 were provided by an unnamed Colombian national who skipped the country was likewise unsubstantiated and chimerical. Accordingly, we find that the assets were purchased with available funds of petitioner and constitute expenditures in the respective years. Treasury Camp Property
The parties stipulated that petitioner purchased Treasure Camp from Dr. Irwin on July 1, 1986, and that the purchase price was paid, at least in part, by the assumption of a first mortgage on the property in the amount of $ 89,760.40. Respondent contends that petitioner paid an additional $ 35,000 in cash to Dr. Irwin. Petitioner contends kthat the purchase price was limited solely to the assumption of the mortgage. Dr. Irwin testified at the trial of this case. We found his testimony credible. Dr. Irwin *595 testified that he acquired the property for $ 135,000 as a retirement home and that due to financial problems he elected to sell the property. He further testified that the sales price included $ 35,000 cash in addition to the assumption of the mortgage, that he received the $ 35,000 in small bills, generally hundreds and twenties, that he deposited the payments into his bank account, and that he reported the sale on his 1986 Federal income tax return, reporting the sales price as including the $ 35,000 cash. Dr. Irwin's testimony was not refuted. Petitioner offered no proof other than his self-serving, unsupported, uncorroborated testimony. Dr. Irwin's testimony and the related exhibits clearly demonstrate that petitioner paid Dr. Irwin $ 35,000 in cash for the Treasure Camp property. Southern Oaks Property
On September 26, 1984, petitioner purchased Southern Oaks Property for $ 5,000 in cash and the balance, $ 19,214.29, through the proceeds of a note and mortgage. The $ 5,000 cash was an expenditure in 1984 and is not challenged. Petitioner contends that he did not pay the note and, therefore, the $ 19,214.29 should not qualify as an expenditure in 1984. He contends *596 that Jim King paid the note on his behalf. However, petitioner's argument fails because he did not demonstrate that Jim King paid the note. The note carried the notation "Paid in Full 10-18-84" and is signed by J. A. King. But, such a notation does not show J. A. King paid the note, it only serves to acknowledge that the note was paid. J. A. King was the real estate agent handling this transaction, and it is likely the real estate agent would have acknowledged the payment of the note, but it is unlikely the real estate agent would have volunteered to pay the note. Petitioner's version of events is not corroborated by the other facts in the record. Furthermore, we are not bound to accept his self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Pascarelli v. Commissioner, 55 T.C. 1082, 1095 (1971), affd. without published opinion 485 F.2d 681 (3d Cir. 1973). Regardless, petitioner brought forth no witnesses or other evidence to corroborate that J. A. King paid the note on his behalf. On the basis of the record as a whole, we find that the $ 19,214.29 was an expenditure *597 made by petitioner during 1984. Certificate of Deposit
Petitioner contends that the certificate of deposit he purchased in 1985 was purchased with $ 15,000 he received in repayment of a loan he made to Mr. Geiger. Petitioner has offered no proof of any such loan or receipt of any such funds. Therefore, the $ 15,000 does not constitute a nontaxable source of funds for 1985, and we find that petitioner purchased the certificate of deposit with his available funds. Personal Living Expenses
Petitioner purchased at least 10 cars during the years at issue. Petitioner contends that the cost of the cars should be included in the personal living expense figure. Petitioner's argument fails for two reasons. First, the parties stipulated separately to the car purchases and payments on the loans, and they are clearly separate and distinct from the stipulated personal living expenses. Second, the argument is contrary to reason. If the car purchases were deducted from the personal living expenses, the result would be that petitioner subsisted on virtually nothing. Depreciation
Petitioner argues that respondent's analysis is flawed because it does not give him credit *598 for depreciation. This argument is based on a lack of understanding of the indirect method of proof. Under the source and application of funds method of proof, the amount by which a taxpayer's application of funds exceeds his reported sources of funds, amounts to taxable income. Depreciation is simply not an application of funds as petitioner argues. Sources of Funds
1984
Petitioner contends that in 1984 he had nontaxable sources of funds, in addition to those discussed above, in the form of a $ 10,000 loan made by his father to Southern Price Meats, and $ 2,000 for signing an instrument related to what petitioner referred to as a "mortgage deal". Petitioner's contentions fail for two reasons. First, petitioner offered no evidence of these claimed sources of funds. Second, the $ 10,000 investment by his father does not impact petitioner's source and application of funds. It would be a wash as both the source and application side of the analysis would have been increased by $ 10,000. 1985
Petitioner argues that he received $ 8,000 as a nontaxable source of funds in the form of a loan from a bank in Clearwater, Florida. However, the parties stipulated that *599 the note was executed and paid in full during 1985. Therefore, while the proceeds of the note were a nontaxable source of funds, the repayment of the note in the same year is an expenditure of funds that nets the equation to zero. Respondent did not include this amount in her analysis, but this was to no detriment to petitioner. Additionally, petitioner argues that he purchased a condominium and received $ 5,000 from a "real estate guy" as a "just be nice fee" which was an additional source of funds for 1985. This story seems implausible and was in no way substantiated. Therefore, we find that the $ 5,000 does not constitute a source of funds for 1985. 1986
Petitioner contends that he had two additional sources of funds which respondent did not utilize in its source and application of funds analysis for 1986. He alleges he sold the bass boat purchased in 1986 for $ 5,000 in the same year, and that he received $ 4,000 from Randy Corbin to make payment on the Treasure Camp property. However, there is no evidence beyond petitioner's self-serving testimony to support such assertions, and, therefore, we find these amounts do not constitute a source of funds for 1986. 1987
*600 Petitioner alleged, and respondent allowed in her notice of deficiency, that he received $ 6,000 from the sale of Southern Oaks Lot 7 during 1987. In addition, respondent allowed another $ 26,000 as a source of funds for the sale of Southern Oaks Property during 1987. Respondent did not include these amounts in the computation supporting her amended answer. The absence of the sales proceeds generated the increased deficiency for 1987. As such, respondent bears the burden of proof on this issue. Respondent introduced no evidence regarding the sales, but rather merely relied on the burden of proof being on petitioner. Consequently, respondent did not meet her burden of proof and is not entitled to the increased deficiencies related to the above sales of property. Finally, in the amendment to answer respondent made certain concessions resulting in reduced tax deficiencies for 1985, 1986, and 1988. Respondent is sustained in the amounts set forth in the amendment to answer for those years. D. Additions to Tax
1. Negligence
Section 6653(a)(1)[4] imposes an addition to tax if any portion of an underpayment is due to negligence or disregard of the rules or regulations. *601 Section 6653(a)(2) provides for an addition to tax in the amount of 50 percent of the interest on the portion of the understatement attributable to negligence. Negligence for purposes of section 6653(a) is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination that petitioner's underpayment was due to negligence is "presumptively correct and must stand unless the taxpayer can establish that he was not negligent." Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337. A review of the record in this case leads to the inescapable conclusion that petitioner was negligent *602 with respect to his failure to report income for the years at issue. Petitioner kept no records, or if he did he failed to report the income earned. It is clear that petitioner's actual income far exceeded his reported income for each year. Moreover, petitioner has offered no evidence pertaining to the negligence issue. Accordingly, the additions to tax under section 6653(a) are sustained for 1984 and 1987 on the amounts set forth in respondent's notice of deficiency and for 1985, 1986, and 1988 in amounts set forth in respondent's amended answer. 2. Failure to Timely File
Section 6651(a)(1) provides for an addition to tax for failure to timely file Federal income tax returns unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The burden of proof is on petitioner to show that the failure is due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241 (1985). Petitioner did not timely file a Federal income tax return for the taxable year 1985. The return was filed on August 20, 1986. No extension had been granted. Furthermore, petitioner failed to introduce any evidence *603 or explanation for the late filing. Accordingly, the addition to tax under section 6651(a)(1) is sustained in the amount set forth in respondent's amended answer. 3. Substantial Understatement
Section 6661(a) provides that, if there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Pallottini v. Commissioner, 90 T.C. 498 (1988). There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1). Petitioner has failed to challenge the additions to tax for substantial understatement under section 6661, except insofar as he disputes the understatements upon which such additions to tax are based. Accordingly, to the extent we have determined understatements of income tax for the taxable years at issue, we uphold the additions to tax under section 6661 for 1984 and 1987 in amounts set forth in respondent's notice of deficiency and for 1985, 1986, and 1988 in the amounts *604 set forth in respondent's amended answer. E. Constitutional Issue
Petitioner contends that respondent's recomputation of income is flawed and the statements made by petitioner while incarcerated should be excluded because respondent's agent, Mr. Elliott, failed to give petitioner the warnings mandated by Miranda v. Arizona, 384 U.S. 436 (1966). Petitioner contends the evidence was in the form of admissions of petitioner's cost of living, purchases of assets, and other expenditures. Petitioner relies primarily on Mathis v. United States, 391 U.S. 1 (1968), in support of his argument. In Miranda, the Court examined in-custodial abuses which eroded the Fifth Amendment to the Constitution guarantee that "No person * * * shall be compelled in any criminal case to be a witness against himself". U.S. Const. amend. V. [Emphasis added.] The Miranda warnings are required to be given "when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, supra at 477. *605 The scope of required Miranda warnings has since been expanded beyond custodial police interrogations. In Mathis, the Court held that the Miranda warnings were required at the commencement of an interview conducted by an internal revenue service agent in a State prison during a tax investigation. The Court reversed and remanded a criminal conviction that was based in part on the introduction in a criminal trial of self-incriminating evidence obtained from a defendant during interrogation by a revenue agent while the defendant was incarcerated, which evidence was given without Miranda warnings. The facts in Mathis are distinguishable from those before us today. In Mathis, the revenue agent, in furtherance of a civil examination, developed facts ultimately used for a criminal conviction. Here, the facts were developed in furtherance of a civil tax examination and were used in a civil tax trial. Moreover, there is no evidence in the record that any criminal investigation or proceeding was ever contemplated against petitioner. Petitioner did not bring forward any additional cases which would support his argument that Miranda warnings are necessary prior *606 to the admission of evidence in a civil tax proceeding. Consequently, we hold that the statements petitioner made to Mr. Elliott while in the Florida jail are admissible into evidence. To reflect the foregoing, [5]
Decision will be entered for respondent. Appendix APPLICATION OF FUNDS
1984
1985
Real Estate:
Southern Oaks Lot 7 $ 13,418.60
Southern Oaks Prop 5,000.00
1st Mort Pymt   19,218.29
Paradise Point Treasure Camp 1st Mort Pymt   Hamlet
1st Mort Pymt   Island Place
5,359.39
2nd Mort Pymt   28,154.95
1st Mort Pymt   272.77
Suwanee
1st Mort Pymt   Fed Income Tax Pymt:
1,878.00
Exp Per Inc Tax Returns:
Moving Expense  200.00
S E Health Ins  Schedule A  Schedule C  20,776.00
Schedule E  10,601.00
Form 4797-Airplane  25-Foot Boat:
Purchase  Boat Loan Prin  Vehicles:
1984 Dodge Ram Charger  4,883.75
1984 Lincoln  12,000.00
Continental  Column 1 Invalid length
1985 Chev C-20 Pickup  579.67
1988 Chev Pickup  Prin Pymt      1981 DeLorean  1985 Nissan Stat Wagon  1981 Oldsmobile Omega  1985 Jeep Wagoneer  3,000.00
1985 Chev C-10 Pickup  2,979.85
1986 Chrysler Caravelle  1987 Dodge Raider  Other:
Contr to Salls Prop  21,462.00
Pur of CD  10,000.00
Contr to Geiger & Assoc  Loan to So Pride Meats  20,000.00
Pur of Bass Boat  Loan of Warren Bronson  Personal Living Exps.  15,000.00
17,400.00
TOTAL APPLICATIONS
$ 77,720.64
$ 134,463.63
*607 APPLICATION OF FUNDS
1986
1987
1988
Real Estate:
Southern Oaks Lot 7 Southern Oaks Prop 1st Mort Pymt   Paradise Point $ 541.50
Treasure Camp $ 35,000.00
1st Mort Pymt   6,838.00
4,510.50
Hamlet
19,321.47
1st Mort Pymt   14,274.00
$ 2,873.00
Island Place
2nd Mort Pymt   1st Mort Pymt   5,732.60
6,376.62
590.47
Suwanee
10,556.00
1st Mort Pymt   815.00
Fed Income Tax Pymt:
500.00
7,019.00
6,317.00
Exp Per Inc Tax Returns:
Moving Expense  S E Health Ins  275.00
Schedule A  18,057.00
11,835.00
12,572.00
Schedule C  21,939.00
24,368.00
34,793.00
Schedule E  11,972.00
18,138.00
22,088.00
Form 4797-Airplane  33,095.00
25-Foot Boat:
Purchase  20,084.00
Boat Loan Prin  1,336.00
3,395.00
Vehicles:
1984 Dodge Ram Charger  1984 Lincoln  Continental  1985 Chev C-20 Pickup  1988 Chev Pickup  8,000.00
Prin Pymt      1,739.52
1981 DeLorean  15,012.00
1985 Nissan Stat Wagon  3,346.00
1981 Oldsmobile Omega  2,761.00
1985 Jeep Wagoneer  1985 Chev C-10 Pickup  1986 Chrysler Caravelle  6,000.00
1987 Dodge Raider  500.00
Other:
Contr to Salls Prop  16,000.00
18,103.00
3,974.00
Pur of CD  Contr to Geiger & Assoc  5,000.00
Loan to So Pride Meats  Pur of Bass Boat  5,000.00
Loan of Warren Bronson  20,000.00
Personal Living Exps.  18,500.00
15,000.00
18,500.00
TOTAL APPLICATIONS
$169,860.07
$ 175,180.62
$ 167,606.99
*608 SOURCES OF FUNDS
1984
1985
Loan From Petr's Father *
25,000.00
Fed Income Tax Refund
Loan Repymt from So Pride Meats
25,000.00
Cashing of CD
Sale of Southern Oaks Prop *
Sale of Southern Oaks Lot 7 *
Income Reported on Forms 1040
Contract Svs Meat Cutter  11,138.00
Interest Income  859.00
Schedule C Gross Receipts  28,468.00
Schedule E Rental Income  7,445.00
Form 4797 -- Sale Aircraft  TOTAL SOURCES OF FUNDS
$ 36,138.00
$ 61,772.00
UNDERSTATEMENT OF INCOME
$ 41,582.64
$ 72,691.63
SOURCES OF FUNDS
1986
1987
1988
Loan From Petr's Father *
929.00
Fed Income Tax Refund
Loan Repymt from So Pride Meats
Cashing of CD
10,158.37
Sale of Southern Oaks Prop *
26,000.00
Sale of Southern Oaks Lot 7 *
6,000.00
Income Reported on Forms 1040
Contract Svs Meat Cutter  Interest Income  300.00
364.00
Schedule C Gross Receipts  58,000.00
74,500.00
66,750.00
Schedule E Rental Income  4,975.00
11,067.00
13,570.00
Form 4797 -- Sale Aircraft  15,000.00
TOTAL SOURCES OF FUNDS
$ 73,133.37
$ 132,867.00
$ 81,613.00
UNDERSTATEMENT OF INCOME
$ 96,726.70
$ 42,313.62
$ 85,993.99
*609 Footnotes
1. 50% of interest on deficiency.↩
1. 50% of interest due on $ 23,746. ↩
2. 50% of interest due on $ 20,953. ↩
3. 50% of interest due on $ 31,746.↩
4. 50% of interest due on $ 16,168.↩
1. Respondent did not include the claimed Schedule C automobile and truck expenses or the claimed Schedule E automobile and travel expenses in her source and application of funds analysis for the years at issue.↩
2. See DeFranco v. Commissioner, T.C. Memo. 1988-400↩.
3. See Cheesman v. Commissioner, T.C. Memo. 1990-350; Jones v. Commissioner, T.C. Memo. 1983-110; Troncelliti v. Commissioner, T.C. Memo. 1971-72↩.
4. For the taxable years 1986 and 1987, sec. 6653(a)(1) and (2) was renumbered sec. 6653(a)(1)(A) and (B), and for the taxable year 1988 the section was renumbered sec. 6653(a)(1)↩.
5. Attached as an appendix is a table reflecting our findings as to petitioner's source and applications of funds for the years at issue.↩
*. per notice of deficiency↩